JACK R. OLKEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Olken v. Commissioner
Docket No. 1479-80
United States Tax Court
T.C. Memo 1981-176; 1981 Tax Ct. Memo LEXIS 568; 41 T.C.M. (CCH) 1255; T.C.M. (RIA) 81176; April 13, 1981. Jack R. Olken, pro se. Anita N. Gottlieb, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioner's Federal income tax in the amount of $ 8,858 for the taxable year 1976 and additions to the tax under section 6653(a)[1] in the amount of $ 442.90. Concessions having been made, [2] the issues remaining are (1) whether petitioner is entitled to a charitable contributions deduction under section 170 in excess of the amount *569 allowed by respondent, (2) whether petitioner is entitled to a theft loss deduction under section 165(c)(3), and (3) whether petitioner has established that any underpayment of tax was not due to his negligence or intentional disregard of rules and regulations under section 6653(a). FINDINGS OF FACT Petitioner resided in Waukegan, Illinois, at the time he filed his petition in this case. He had timely filed his individual Federal income tax return for the year 1976. Petitioner was an optometrist who, during the year 1976, was employed at different times by various employers. Petitioner entertained some thought of going into business for himself someday, and in the years 1974 through early 1976 he had acquired and accumulated various optical frames, temples, contact lenses, and optical *570 cases that he thought he might use in that business. He purchased most of those items from various "gypsy peddlers" from the New York City area. Those peddlers bought truck loads of these items from factories on the east coast and then sold them throughout the mid west. Petitioner made most of his purchases in cash. Petitioner has no receipts or other records of quantities or styles of the items he purchased or the dollar amounts he paid for any of them. About 60 percent of the frames were a single style metal frame for women. The other 40 percent of the frames were plastic frames, in various styles and colors for both men and women. In early March of 1976, petitioner, who was in the process of moving to a new personal residence, had various optical items and other items of personal property stored in the trunk of his car. On March 9, 1976, the car was broken into and various items of property were stolen from the trunk. Petitioner reported the following loss of property [3] to the police: *571 Complete set of Wilson golf clubs and bag 2 men's leisure suits 3 pairs of men's trousers 1 steel belted tire and wheel 4 wheel covers 105 pairs of soft contact lenses 135 optical frames of various sizes and colors. Petitioner's insurance company reimbursed him for the loss of the tire and wheel, but not for the other items. None of the other stolen items were ever recovered. On his Federal income tax return for 1976, petitioner deducted a theft loss of $ 5,752 (before the $ 100 statutory deduction), which he computed as follows: Leisure suits
$ 280
Trousers
67
Golf clubs
350
105 soft contact lenses at
$ 25 each
2,625
135 optical frames at $ 18 each
2,430
He valued the items of clothing and golf clubs at the retail prices he had paid for the items. The contact lenses were valued by certain adjustments to 1977 catalogue prices. The frames were valued at a single price without regard to the different styles or whether the frames were metal or plastic or for men or women. On audit respondent disallowed the theft loss deduction in its entirety for lack of substantiation. Sometime after the theft loss occurred and perhaps prompted by *572 that event, petitioner gave up any idea of opening his own business as an optometrist. He then donated the rest of his optical merchandise to the Round Lake Lions Club of Round Lake, Illinois. On November 30, 1976, that Lions Club acknowledged receipt of petitioner's donation of the following items: 763 optical frames (60% metal and 40% plastic) 256 pairs of aluminum temples 500 optical cases. On his Federal income tax return for 1976, petitioner deducted an amount of $ 12,400 for charitable contributions in the form of property and $ 952 for cash contributions. The contributions in property were the optical items donated to the Lions Club, and were computed on the tax return as follows: 458 metal frames at $ 14.50 each
$ 6,641
305 plastic frames at $ 12.50 each
3,813
256 pairs of aluminum temples at $ 5.65 each
1,446
500 optical cases at $ 1.00 each
500
Total:
$ 12,400
On audit, respondent disallowed the $ 12,400 for lack of substantiation and disallowed all except $ 156 of the cash contributions for the same reason. OPINION Respondent no longer questions the fact that a theft occurred and the fact that petitioner donated property to a qualified *573 charitable organization, the Round Lake Lions Club. Therefore, the principal issues in this case are purely factual questions of substantiation of the amounts claimed. Deductions are a matter of legislative grace, and the taxpayer has the burden of establishing that he is entitled to the claimed deductions. Welch v. Helvering, 290 U.S. 111, 115 (1933); New Colonial Co. v. Helvering, 292 U.S. 435, 440 (1934); Deputy v. DuPont,308 U.S. 488, 493 (1940). There is no evidence in the record in regard to charitable contributions in cash. Petitioner has failed to carry his burden of proof in that regard, and the Court has no basis for allowing any amount in excess of the $ 156 already allowed by respondent. The record is also most unsatisfactory as to the fair market value of or petitioner's cost or other basis in the optical merchandise, either that contributed to the Lions Club or that stolen from petitioner's car. Contrary to respondent's urging, however, the Court accepts petitioner's testimony as to how he acquired that optical merchandise *574 and the fact that he paid the "gypsy peddlers" in cash for the items. [4] On the other hand, respondent's complaints about the quality of the evidence are well taken. Petitioner's vague and inconclusive testimony suggests to the Court that petitioner has grossly overstated the cost or value of the items contributed to the Lions Club and the items stolen from the trunk of his car. *575 For example, petitioner testified that on his return he used a figure of $ 12 to $ 13 each for the metal frames and $ 9 to $ 10 for the plastic frames. In fact, petitioner claimed a charitable contributions deduction for an amount of $ 14.50 for each metal frame and $ 12.50 for each plastic frame, and for the theft loss deduction he claimed $ 18 each for some of these same frames whether metal or plastic. The catalogue prices for plastic frames ranged from about $ 4 to $ 10 and averaged slightly more than $ 6 per frame. Petitioner's testimony about the adjustments he made to certain unspecified catalogue prices was confusing and unenlightening. There is also the fact that 60 percent of the frames were a single style of metal frame for women. It is doubtful that petitioner bought such a large quantity of that one style of metal frame for use in his future business. On cross examination, petitioner admitted that if he were going to sell the frames to individual optometrists or opticians, he could sell only five to seven frames to a given practitioner, and that it would take him up to two years to dispose of the frames that way. No doubt petitioner himself would also need only five *576 to seven of that particular style if he too were in business. While petitioner agreed that that particular frame was out of style by the time of the trial, he testified it was still popular in 1976. Even so, the frame would certainly be out of style long before petitioner could use up that quantity in his own business, and the large number of that one type would make the collection less valuable. Despite the weakness of the evidence as to the amounts, the Court is satisfied that petitioner is entitled to a charitable contributions deduction for the property he donated to the Lions Club and a theft loss deduction for the property stolen from his car, and will apply the Cohan rule to determine the amounts allowable. [5] However, in the absence of supporting records, the Court will "bear heavily" against the taxpayer "whose inexactitude is of his own making." Cohan v. Commissioner, 39 F. 2d 540, 544 (2d Cir. 1930). Applying our best judgment to approximate the amount of the deductions allowable, we find that petitioner is entitled to an additional charitable contributions *577 deduction for property donated to the Lions Club in the amount of $ 1,000 and a theft loss deduction for all of the property stolen of $ 500. As to the negligence penalty, petitioner bears the burden of establishing that the underpayment of tax was not due to his negligence or intentional disregard of rules and regulations under section 6653(a). Bixby v. Commissioner, 58 T.C. 757 (1972). Petitioner has not sustained his burden, and the Court is satisfied that petitioner grossly and negligently overstated the amount of the deductions claimed on his return. Therefore, the negligence penalty will be imposed. To reflect the concessions and the above holdings, a computation must be prepared under Rule 155. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise stated. ↩
2. In their Stipulation of Facts, respondent has conceded that petitioner is entitled to an exemption for his daughter, Kimberly, and petitioner had conceded that his filing status for 1976 was single rather than unmarried head of household.↩
3. Petitioner testified that some of his personal papers, including receipts for his purchases of optical merchandise, were also stolen at that time. The Court is not persuaded that petitioner ever had any receipts for his cash purchases.↩
4. In an apparent attempt to bring this case within Holcombe v. Commissioner, 73 T.C. 104↩ (1979), involving an optometrist who made a contribution of frames and lenses that had been given to him by friends and patients and without payment, respondent characterizes petitioner's testimony as an "incredible story" and suggests that since petitioner worked for various retail optical establishments, that: "One or more of these businesses probably disposed of obsolete items (such as out-of-style eyeglass frames) by either discarding them or giving them to whoever might want them (such as an employee)." There is nothing in the record even to suggest the scenario sketched by respondent, let alone that that is what "probably" happened. Assuming these retail establishments such as Montgomery Ward's optical department had such excess, obsolete inventory items, there is no indication that they would simply discard or give away the items rather than themselves donate the items to charitable organizations.
5. In addition to the optical merchandise, the theft loss included certain clothing and golf clubs. The record shows the original purchase prices for these items but not the age and condition of them at the time of the theft. Therefore, we cannot accept the original purchase prices as the amount of the loss.↩