T.C. Memo. 2002-25


UNITED STATES TAX COURT


ANN M. LASSITER AND ESTATE OF HENRY A. LASSITER, DECEASED,
   ANN M. LASSITER, ADMINISTRATRIX, CTA, Petitioners <u>v</u>.
       COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7324-00.                    Filed January 25, 2002.


        H and W deducted net operating losses (NOL) on
their joint Federal income tax return for 1994, the
year in which H died.  The NOLs, all of which were
attributable to H's business activities, arose before
and during H's bankruptcy proceeding under ch. 11 of
the Bankruptcy Code.  The bankruptcy proceeding
terminated in 1994 after H's death.  Pursuant to Fed.
R. Bankr. P. 1016, the proceeding was continued and
concluded after H's death as though he had not died.
        <u>Held</u>:  Secs. 172(b)(1) and 1398(i), I.R.C., permit
the deduction of the NOLs on the joint return.

David D. Aughtry, Lawrence Sherlock, and Linda S. Paine, for petitioners.

David Delduco and Elizabeth B. Williamson, for respondent.


MEMORANDUM OPINION

LARO, Judge:  This case is before the Court fully stipulated.  See Rule 122.[1]  Respondent determined a $281,556 deficiency in the 1994 Federal income tax of Henry A. Lassiter and Ann M. Lassiter (Mr. Lassiter and Ms. Lassiter, respectively; the Lassiters, collectively) and a $56,311 addition thereto under section 6662.  Following respondent's concession that petitioners are not liable for the addition to tax, we must decide whether Mr. Lassiter, upon termination of his bankruptcy estate, succeeded to any net operating losses (NOLs) from the estate which the Lassiters may use to calculate their 1994 joint Federal income tax liability.  We hold he did.

## Background

The stipulation of facts and the attached exhibits are incorporated herein.  The stipulated facts are found accordingly. The Lassiters were married until Mr. Lassiter died on May 9, 1994, and Ms. Lassiter, in her own right and as administratrix of

---

[1] Unless otherwise noted, Rule references are to the Tax Court Rules of Practice and Procedure, and section references are to the Internal Revenue Code in effect for the year in issue. Bankruptcy Code references are to 11 U.S.C.(2000).

Mr. Lassiter's estate, filed a joint Federal income tax return for 1994. She resided in Georgia when she filed the petition with this Court. The record does not disclose where Mr. Lassiter resided when he died.

Mr. Lassiter built a substantial net worth buying and selling timberland and other realty. He had interests in a number of corporate and noncorporate entities dealing in real estate, including Lassiter Properties, Inc. (LPI), an S corporation in which he was the sole shareholder. He financed his real estate purchases through bank loans. In 1989, because of a downturn in the economy, many banks tightened their lending policies and refused to renew his loans.

Mr. Lassiter was unable to repay his debts on time, and, on November 4, 1991, he filed in the Northern District of Georgia an individual bankruptcy petition under chapter 11 of the Bankruptcy Code (Chapter 11). Separate Chapter 11 bankruptcy petitions were also filed at that time for LPI, Ansley Development Corp. (Ansley), and Little Henry's Food Stores, Inc. (Henry's) (Henry's, Ansley, LPI, and Mr. Lassiter are collectively referred to as the debtors). Mr. Lassiter had a 50-percent interest in Ansley, and he was the sole shareholder of Henry's.

The Bankruptcy Court never consolidated the four separate bankruptcy cases but allowed the debtors to file a single plan of reorganization. The debtors filed a joint plan of reorganization

on or about June 1, 1992.  After this plan was fine tuned, the debtors filed a first amended joint plan of reorganization on April 14, 1994.

Mr. Lassiter's individual bankruptcy case continued after his death.  He continued to be included in the proceeding as debtor-in-possession, as though he had not died.  He continued to be included in all actions concerning the plan of reorganization, including the Bankruptcy Court's December 21, 1994, order of confirmation.  That order terminated each debtor's bankruptcy estate.

Taking into account the Lassiters' original and amended income tax returns and all adjustments respondent made to those returns (other than those at issue in this case), their taxable income or NOLs for 1987 through 1994 are as follows:

| Year | Income/(NOL) |
|------|--------------|
| 1987 | $190,121 |
| 1988 | -0- |
| 1989 | 49,967 |
| 1990 | (1,674,676) |
| 1991 | 2,963,747 |
| 1992 | 399,836 |
| 1993 | 57,716 |
| 1994 | 811,040 |

For 1991 through 1994, the taxable income or NOLs of Mr. Lassiter, as debtor-in-possession of his bankruptcy estate, are as follows:

| Year | Income/(NOL) |
|------|-------------|
| 1991 | ($59,106) |
| 1992 | 506,922 |
| 1993 | (2,631,896) |
| 1994 | (511,650) |

## Discussion

Petitioners argue that they may apply against their 1994 income the NOLs which passed to Mr. Lassiter from his bankruptcy estate under section 1398(i).  Respondent argues that the Lassiters may not use any of those NOLs because the bankruptcy estate terminated after Mr. Lassiter's death.  We agree with petitioners.

We start our analysis by examining sections 172 and 1398, the statutory provisions in issue.  We begin first with section 172, which sets out in detail the procedures to be used in computing the amounts allowable as NOLs and in determining the years to which an NOL may be carried.  So far as is relevant, section 172(b)(1) provides:

> SEC. 172(b).  Net Operating Loss Carrybacks and Carryovers.--
>
> (1)  Years to which loss may be carried.--
>
> (A) General rule.--Except as otherwise provided in this paragraph, a net operating loss for any taxable year--

(i) shall be a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss, and

(ii) shall be a net operating loss carryover to each of the 15 taxable years following the taxable year of the loss.

Under a plain reading of section 172(b)(1)(A)(i), a taxpayer such as Mr. Lassiter must first apply an NOL loss to his third taxable year preceding the loss, then apply any remaining portion of that loss to his second taxable year preceding the loss, and then apply any portion of the loss that still remains to his taxable year immediately preceding the loss. If the NOL is not fully absorbed in those 3 carryback years, or if the taxpayer elects under section 172(b)(3) to waive the carryback of the NOL, section 172(b)(1)(A)(ii) mandates that the unabsorbed NOL be carried forward to, and applied in, the first taxable year postdating the loss. Section 172(b)(1)(A)(ii) further mandates that this carryover procedure follow for each of the next 14 years until the NOL is applied in full. With the exception of section 172(b)(3), and certain other specialized rules set forth in section 172(b), none of which are applicable here, the statute does not provide explicitly any rule that would allow a taxpayer to decline to apply an NOL in the year which is next in line under the statutory scheme. As the U.S. Supreme Court has observed with respect to the purpose of this statute:

the net operating loss carryover and carryback provisions "were enacted to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. They were designed to permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year." [United States v. Foster Lumber Co., 429 U.S. 32, 42 (1976) (quoting Libson Shops, Inc. v. Koehler, 353 U.S. 382, 386 (1957)).]

The parties agree that if the bankruptcy estate had terminated in 1994 before the death of Mr. Lassiter, sections 172 and 1398(i) would allow Mr. Lassiter to succeed to the NOLs of the bankruptcy estate and would allow petitioners to apply those NOLs on the Lassiters' 1994 tax return. The parties also generally agree on the operation of section 1398, which was enacted as part of the Bankruptcy Tax Act of 1980, Pub. L. 96-589, sec. 3, 94 Stat. 3397. In general, and so far as is relevant to this case, the operation of section 1398 is summarized as follows. The filing of a bankruptcy petition under Chapter 11 creates a new taxable entity, the bankruptcy estate, that is separate from the debtor. Sec. 1398. The bankruptcy estate computes its taxable income in the same manner as an individual does, except that the entity must use the tax rates applicable to a married individual filing a separate return. Sec. 1398(c).

Further, the bankruptcy estate succeeds to and takes into account the individual debtor's tax attributes (e.g., any NOL carryforward). Sec. 1398(g). In the case of NOLs, the

bankruptcy estate succeeds to the NOLs as determined under section 172, as of the first day of the individual debtor's taxable year in which the case commences. Sec. 1398(g)(1). The NOLs as determined by a calendar year individual debtor, as of January 1 of the year the debtor files a bankruptcy petition, go to the bankruptcy estate for its exclusive use for the benefit of the creditors on the commencement date. Id. The individual debtor then succeeds to and takes into account the NOLs of the bankruptcy estate at the termination of the bankruptcy case. Sec. 1398(i). This includes both the remaining NOLs that the bankruptcy estate succeeded to under section 1398(g) and the unused tax attributes accumulated by the operation of the bankruptcy estate. Id.[2] The years in which the debtor may use

---

[2] Specifically, subsecs.(g) and (i) of sec. 1398 provide:

SEC. 1398(g). Estate Succeeds to Tax Attributes of Debtor.--The estate shall succeed to and take into account the following items (determined as of the first day of the debtor's taxable year in which the case commences) of the debtor--

(1) Net operating loss carryovers.--The net operating loss carryovers determined under section 172.

*       *       *       *       *       *       *

(i) Debtor succeeds to tax attributes of estate.--In the case of a termination of an estate, the debtor shall succeed to and take into account the items referred to in paragraphs (1), (2), (3), (4), (5) and (6) of subsection (g) in a manner similar to that provided in such paragraphs (but taking into account
(continued...)

the estate's NOLs and the unused NOLs that the estate succeeded to are governed by section 1398(j)(2).  That section provides:

> (2) Treatment of certain carrybacks.--
>
>     (A) Carrybacks from estate.--If any carryback year of the estate is a taxable year before the estate's first taxable year, the carryback to such carryback year shall be taken into account for the debtor's taxable year corresponding to the carryback year.
>
>     (B) Carrybacks from debtor's activities.--The debtor may not carry back to a taxable year before the debtor's taxable year in which the case commences any carryback from a taxable year ending after the case commences.

The interpretation of the phrase "the debtor shall succeed to and take into account the items referred to in paragraphs (1) * * * of subsection (g)" in section 1398(i) is critical to the resolution of this case.  In determining the meaning of a statutory provision such as this, the plain meaning of the provision is ordinarily conclusive.  United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989).  Such a plain meaning must be ascertained in light of the object and structure of the statute as a whole.  Crandon v. United States, 494 U.S. 152, 158 (1990); K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988).

Bearing in mind the language and design of the statute as a whole, we focus on three portions of the emphasized phrase, see supra note 2, in section 1398(i).  First, Congress chose to

---

2(...continued)
that the transfer is from the estate to the debtor instead of from the debtor to the estate).  * * * [Emphasis added.]

characterize the type of obligation imposed by the subsection by using the word "shall". Congress' use of the word "shall" relates to the essence of the statutory provision itself, and, when viewed in light of the statute as a whole, imposes a mandatory directive on the debtor in applying the relevant attributes. Alabama v. Bozeman, 533 U.S. 146, ___, 121 S. Ct. 2079, 2085 (2001); Estate of La Sala v. Commissioner, 71 T.C. 752, 762-763 (1979) ("the word 'shall' is the single most important textual consideration in evaluating whether compliance with a statutory provision is mandatory or directory"). Second, Congress chose to use the term "succeed to" with no limitation on the succession. The ordinary meaning of the term in this context is to take next in time or to follow in succession (e.g., the acquisition of rights from another). Webster's II New Riverside University Dictionary 1156 (1994); Black's Law Dictionary 1431 (6th ed. 1990).

Third, and most importantly, the text of the phrase mandates that the "debtor" be the person who succeeds to and takes into account any NOLs from the bankruptcy estate. We think that Congress's use of the word "debtor", rather than the term "taxpayer" that is normally used in the Code, is significant. The word "debtor" in the bankruptcy context is a term of art that the Bankruptcy Code defines specifically as any "person or municipality concerning which a case under this title has been

commenced". Bankruptcy Code sec. 101(13). Given that Congress promulgated that definition as part of the Bankruptcy Reform Act of 1978, Pub. L. 95-598, sec. 101(12), 92 Stat. 2551, and that we must presume that Congress knew of this definition 2 years later when it enacted section 1398(i), see Cottage Sav. Association v. Commissioner, 499 U.S. 554, 562 (1991); Lorillard v. Pons, 434 U.S. 575, 581 (1978); Kovacs v. Commissioner, 100 T.C. 124, 133 (1993), affd. without published opinion 25 F.3d 1048 (6th Cir. 1994), we conclude that Congress intended to import the Bankruptcy Code's definition of the word "debtor" into the same word used in section 1398(i). In fact, the legislative history of section 1398 makes it clear, by frequent references to the Bankruptcy Code, that Congress knew about the Bankruptcy Code's terms of art. E.g., S. Rept. 96-1035, at 28-30 (1980), 1980-2 C.B. 620, 634-636.

Death, in and of itself, does not alter the identity of the "debtor" for Bankruptcy Code purposes. Pursuant to statutory authority,[3] the Supreme Court promulgated rule 1016 of the Federal Rules of Bankruptcy Procedure applicable in the case of

---

[3] As part of the Bankruptcy Reform Act of 1978, Pub. L. 95-598, sec. 247, 92 Stat. 2549, 2672, Congress reaffirmed the authority of the Supreme Court to prescribe procedural rules for bankruptcy cases. This authority is codified at 28 U.S.C. sec. 2075 (2000) amongst the provisions which grant the Court the authority to prescribe the rules of procedure for Federal District Courts.

the debtor's "Death or Incompetency".  That rule, which carries the force and effect of law, provides:

### Death or Incompetency of Debtor

If a reorganization, family farmer's debt adjustment, or individual's debt adjustment case is pending  under chapter 11, chapter 12, or chapter 13, the case may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.  [Emphasis added.]

Taking into account that Congress used the mandatory form "shall" in section 1398(i), that Congress put no limitation on the succession, and that death does not necessarily alter the identity of the debtor in bankruptcy proceedings strongly, we hold that petitioners are entitled to deduct on their joint return for 1994 the NOLs in question.  The cases cited by respondent for a contrary result merely stand for the general proposition that section 172 shows a general purpose to confine allowable losses to the taxpayer who sustained them and to treat those losses as personal and nontransferable to another.[4]  See, e.g., New Colonial Ice Co. v. Helvering, 292 U.S. 435, 437 (1934)

---

[4] Respondent relies on Poorbaugh v. United States, 423 F.2d 157 (3d Cir. 1970).  We read that case to stand for the proposition that for a cash basis taxpayer, accounts paid or received after the taxpayer's death may not be included in the taxpayer's final joint return.  The facts of Poorbaugh also are distinguishable from those of this case.  Whereas the taxpayer there sought to include in the final joint return transactions that occurred after death, petitioners seek to deduct expenditures that occurred before Mr. Lassiter's death.

(addressing the predecessor to section 172). Section 1398, however, provides explicitly a clear exception to this general rule. See sec. 1398(g), (i), (j). We are unpersuaded by the cases cited that we should deviate from what we perceive is the intent, purpose, and meaning of the statute. Mr. Lassiter is the taxpayer who sustained the NOLs, and he seeks to use those NOLs on his final income tax return. In contrast to respondent, we read no requirement in the statute that those NOLs be "vested" at the time of Mr. Lassiter's death in order for him to do so. Our reading furthers the purpose of section 172 "to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis", United States v. Foster Lumber Co., 429 U.S. at 42 (citation and quotation marks omitted), and is consistent with the purpose of section 1398(i) (a statutory exception to the rule that only the entity that incurs the loss may use the loss).

We conclude that petitioners may use the disputed NOLs on their 1994 joint return. On the basis of this conclusion, we consider it unnecessary to, and do not, consider petitioners' alternative argument that section 6013 produces the same result.

Decision will be entered

under Rule 155.