T.C. Memo. 2003-244

UNITED STATES TAX COURT

ALLAN & JUDY N. GREEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7158-02.                Filed August 14, 2003.

<u>Chester A. Swart</u>, for petitioners.

<u>Vicken Abajian</u> and <u>Guy Glaser</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioners petitioned the Court to
redetermine deficiencies of $31,962 and $6,647 in their 1998 and
1999 Federal income taxes, respectively.  Following concessions,
we decide whether petitioners may deduct for those years net
operating losses (NOLs) which purportedly arose in earlier years.
We hold they may not.  Unless otherwise stated, section

references are to the applicable versions of the Internal Revenue Code.  Rule references are to the Tax Court Rules of Practice and Procedure.  Dollar amounts are rounded to the nearest dollar.

FINDINGS OF FACT

Some facts were stipulated.  The stipulated facts and the accompanying exhibits are incorporated herein by this reference. We find the stipulated facts accordingly.  Petitioners are husband and wife, and they resided in Long Beach, California, when their petition was filed.

In May 1980, petitioners and a third individual formed an S corporation named Gilliflower's Shoppe, Ltd. (GF I).  During August 1981, GF I opened a 1,500-square-foot retail store in Sunnyside, New York.  In October 1981, the carpeting, inventory, and leasehold improvements in that store were damaged by fire. On February 14, 1982, a second fire destroyed a wall in the store and the rest of the store's inventory.  Petitioners received no reimbursement as to the fires, and the store operated at a loss in 1981 and 1982.  The building in which the store was located later burned to the ground in April 1983.  Petitioners received no reimbursement as to this fire, and the store closed permanently.  The record does not establish the income or loss of GF I for any of its taxable years.  Nor does the record establish the amount of the income or loss of GF I that passed through to petitioners.

During 1982, petitioners formed a second S corporation named Gilliflower's Shoppe Steinway Street, Ltd. (GF II). In October 1982, GF II opened a 3,500-square-foot retail store in Astoria, New York. This store operated at a loss in 1982 and closed in July 1984. GF II later opened two other stores. The record does not establish the income or loss of GF II for any of its taxable years. Nor does the record establish the amount of the income or loss of GF II that passed through to petitioners.

On June 23, 1983, petitioners filed a chapter 11 petition in the name of GF II in the United States Bankruptcy Court for the Eastern District of New York.[1] On the same date, they filed in the same court a chapter 11 petition in their own names. On April 5, 1984, they filed in that court a chapter 11 petition in the name of GF I.[2] All three proceedings were converted to chapter 7 proceedings on November 16, 1984, and each of these proceedings was closed in or about 1987.

Petitioners reported on their 1988 through 1997 Federal income tax returns the following negative amounts of adjusted gross income:

---

[1] At the time of this filing, petitioners each owned 50 percent of the stock of GF II. Also at that time, GF II reported in its filings that its assets and liabilities on June 20, 1983, totaled $722,850 and $448,640, respectively.

[2] At the time of this filing, petitioners were the sole shareholders of GF I.

| Taxable Year | Negative Amounts of Adjusted Gross Income |
|---|---|
| 1988 | $662,246 |
| 1989 | 601,726 |
| 1990 | 545,994 |
| 1991 | 518,707 |
| 1992 | 468,723 |
| 1993 | 443,339 |
| 1994 | 497,225 |
| 1995 | 617,510 |
| 1996 | 682,840 |
| 1997 | 738,081 |

Included in these amounts were wages of $117,412, $137,272, $140,435, $130,440, $154,509, $122,322, $110,766, $125,600, $138,291, and $84,233, respectively. The record does not establish the amounts that petitioners reported as their taxable income for any of the years 1988 through 1997. Nor does the record establish petitioners' income (either adjusted gross or taxable) for years before 1988.

For the subject years, petitioners filed with the Commissioner Federal income tax returns using the filing status of "Married filing joint return". They claimed on those respective returns deductions for NOL carryovers of $832,503 and $719,564. Neither the 1998 nor the 1999 return details the composition of the NOL carryovers, e.g., the amounts of the purported NOLs included within the reported NOL carryovers or the years in which those NOLs purportedly arose. Petitioners ascertained their NOL carryover from each year after 1980 by deducting in full any NOL carryover to that year and treating the

loss as shown on the taxable income line of their Federal income tax return for that year as the NOL carryover to the next year.[3] Without taking into account the claimed NOL carryovers to 1998 and 1999, petitioners reported total income for 1998 and 1999 of $207,102 and $120,479, respectively.

The Commissioner determined in the notice of deficiency that petitioners were not entitled to deduct any part of the NOL deductions claimed for 1998 and 1999. The notice of deficiency provides as to these determinations:

> Your loss flow-through from your S corporation is limited to your basis.

> For tax years beginning before August 5, 1997 the period to which you can carry a Net Operating Loss (NOL) back is 3 tax years. The period to which you can carry an NOL forward is 15 tax years.

> We disallowed your net operating loss deduction because the carry-over period expired.

## OPINION

Petitioners made no attempt at trial or on brief to establish the composition of the NOL carryovers at issue. Instead, petitioners point to the notice of deficiency and argue

---

[3] For example, petitioners ascertained their NOL carryover from 1998 to 1999 in the following manner. First, they claimed a deduction on their 1998 Federal income tax return as "Other income" a "Prior Year Carry-Over" of ($832,503), and they reported their adjusted gross income for that year as ($625,401). Second, they subtracted from the reported figure $88,763 for itemized deductions and $5,400 for personal exemptions to arrive at "taxable income" for 1998 (and the NOL carryover to 1999) of ($719,564).

that the Commissioner did not in the notice of deficiency dispute that they had NOL carryovers to 1998 and 1999 in the amounts so claimed. Petitioners conclude from their reading of the notice of deficiency that they may deduct the NOLs in the amounts claimed on the subject returns if they establish: (1) Their basis in the S corporations and (2) that the carryover period for the NOLS has not expired. When this case was tried on May 9, 2003, respondent's counsel in his opening statement stated specifically that the substantiation of the existence, amounts, and years of petitioners' NOLs was in issue. Respondent also stated similarly in his trial memorandum served upon petitioners' counsel on April 17, 2003.

Section 172 allows a taxpayer to deduct an NOL for a taxable year. The amount of the NOL deduction equals the sum of the NOL carryovers plus NOL carrybacks to that year. Sec. 172(a). Absent an election to the contrary, an NOL for any taxable year must first be carried back 3 years and then carried over 15 years. Sec. 172(b)(1)(A), (2), and (3).[4] A taxpayer claiming an NOL deduction for a taxable year must file with his return for that year a concise statement setting forth the amount of the NOL deduction claimed and all material and pertinent facts, including

_____

[4] In 1997, sec. 172(b)(1)(A) was amended to generally require a 2-year carryback and a 20-year carryover for NOLs incurred in taxable years beginning after Aug. 5, 1997. Neither party asserts that this amendment is applicable here, and we conclude it is not.

a detailed schedule showing the computation of the NOL deduction. Sec. 1.172-1(c), Income Tax Regs.

Section 172(c) defines the term "net operating loss" as "the excess of the deductions allowed by this chapter over the gross income. Such excess shall be computed with the modifications specified in subsection (d)." In the case of individuals such as petitioners, the list of modifications in subsection (d) includes that "No net operating loss deduction shall be allowed", that "No deduction shall be allowed under section 151 (relating to personal exemptions)", and that "the deductions allowable by this chapter which are not attributable to a taxpayer's trade or business shall be allowed only to the extent of the amount of the gross income not derived from such trade or business". Sec. 172(d)(1), (3), and (4).

Petitioners' counsel acknowledged at trial that petitioners bear the burden of proof in this case. Petitioners, as taxpayers attempting to deduct NOLs, bear the burden of establishing both the existence of the NOLs and the amount of any NOL that may be carried over to the subject years. Rule 142(a)(1); United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235 (1955); Keith v. Commissioner, 115 T.C. 605, 621 (2000); Jones v. Commissioner, 25 T.C. 1100, 1104 (1956), revd. and remanded on other grounds 259 F.2d 300 (5th Cir. 1958). Such a deduction is a matter of legislative grace; it is not a matter of right.

United States v. Olympic Radio & Television, Inc., supra at 235; Deputy v. Du Pont, 308 U.S. 488, 493 (1940).  Whereas petitioners argue that the composition of the NOLs is not in issue, we conclude to the contrary.  Respondent indicated both in his trial memorandum and in his opening statement at trial that petitioners' substantiation of the existence, amounts, and years of the NOLs underlying the disputed NOL carryovers was in issue. Moreover, petitioners alleged in their petition as to each subject year that "Petitioners did have a [sic] N.O.L. deduction as set forth on the income tax return for the taxable year, or some greater amount".  (Emphasis added.)  The fact that petitioners included in their pleading the phrase "some greater amount" indicates that they contemplated specifically that the Court would redetermine the amount of the NOL deduction for each year.  We also note that petitioners claim to have incurred NOLs in numerous years, two of which are 1981 and 1982, and that we understand petitioners at the least to have acknowledged that part of the disputed NOL carryovers is attributable to 1981 and 1982 NOLs.[5]  In that 1981 and 1982 are both more than 15 years

---

[5] Ms. Green testified vaguely that the NOL carryovers consisted of losses from 1981, 1982, 1983, 1984, and 1986, and that these losses were attributable to "operating losses, the cost of selling goods, the leasehold improvements, [and] the investments."  Petitioners acknowledged on brief that they continued to carry over to the subject years NOLs that arose in 1982.  Petitioners' counsel stated at trial that "this case is regarding a net operating loss that started out in 1982".

before 1998, the first year in issue, and that respondent determined in the notice of deficiency that the 15-year carryover period had expired, we cannot fathom how petitioners could otherwise establish their entitlement to deduct any part of the subject NOL carryovers were they not to substantiate the composition of those carryovers.

Petitioners have made no attempt to substantiate their claimed deductions of NOL carryovers,[6] and the record does not establish that any portion of an NOL that petitioners incurred before 1998 was applied properly to 1998 or 1999.  Petitioners must prove not only that they had an NOL in a year before 1998, but that a portion of an NOL was properly deductible in 1998 and/or 1999.  See Jones v. Commissioner, supra; see also sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. (taxpayers must keep sufficient records to establish the amount of any item reported on their Federal income tax returns).  Although petitioners have consistently attempted to manifest on their tax returns for at least 1988 through 1999 that they were carrying over NOLs to those returns, these representations are not enough for petitioners to meet their burden.[7]  Wilkinson v.

---

[6] Petitioners, for example, have failed to introduce any evidence establishing the years in which they purportedly incurred NOLs or the amount of those purported NOLs.

[7] In fact, petitioners calculated incorrectly the amounts of those represented NOL carryovers; e.g., petitioners included in
(continued...)

Commissioner, 71 T.C. 633, 639 (1979); Jones v. Commissioner, supra at 1104. Petitioners' burden requires at a minimum that they establish that: (1) They had an NOL in at least one specified taxable year before 1998, (2) they elected to forgo a carryback of that NOL, see sec. 172(b)(3),[8] or, if they made no such election, the NOL could not be fully applied against income in the 3 taxable years immediately preceding the taxable year of the NOL, (3) the NOL (as adjusted by the amounts applied in carryback years) could not be applied against income in the taxable years immediately and chronologically following the taxable year of the NOL, and (4) that 1998 is no more than 15 taxable years after the taxable year of the NOL that they seek to apply in 1998, and 1999 is no more than 15 taxable years after the taxable year of the NOL that they seek to apply in 1999. As we explained in Lassiter v. Commissioner, T.C. Memo. 2002-25:

> Under a plain reading of section 172(b)(1)(A)(i),
> a taxpayer * * * must first apply an NOL loss to his
> third taxable year preceding the loss, then apply any
> remaining portion of that loss to his second taxable
> year preceding the loss, and then apply any portion of
> the loss that still remains to his taxable year
> immediately preceding the loss. If the NOL is not

---

[7](...continued)
those calculations a deduction for personal exemptions. See sec. 172(d)(3).

[8] Sec. 172(b)(3) allows a taxpayer to elect to relinquish the carryback period. Such an election must be made, in a prescribed manner, by the due date (including extensions) for filing the taxpayer's return for the NOL year in which the election is to be in effect. Id.

fully absorbed in those 3 carryback years, or if the taxpayer elects under section 172(b)(3) to waive the carryback of the NOL, section 172(b)(1)(A)(ii) mandates that the unabsorbed NOL be carried forward to, and applied in, the first taxable year postdating the loss. Section 172(b)(1)(A)(ii) further mandates that this carryover procedure follow for each of the next 14 years until the NOL is applied in full. With the exception of section 172(b)(3), and certain other specialized rules set forth in section 172(b), none of which are applicable here, the statute does not provide explicitly any rule that would allow a taxpayer to decline to apply an NOL in the year which is next in line under the statutory scheme.

The record does not establish any of these requirements. Accordingly, we sustain respondent's determination as to this issue in full.[9] In so doing, we note again that 1981 and 1982 are outside of the applicable 15-year period and that petitioners have chosen to structure the record so as not to allow us to attribute any specific portion of the NOL carryovers to years other than 1981 and 1982. We also note that any NOL that petitioner incurred in 1983 could not be carried over to 1999.

---

[9] We also are unpersuaded that petitioners had basis in the S corporations to support a deduction of any losses passed through to them from those corporations. Whereas Ms. Green testified at trial that petitioners' basis in the S corporations totals $1,150,000, we find that testimony incredible and unsupported by the record. We decline to rely upon it. We note, however, that even if petitioners had basis in those S corporations, the record does not establish the amount of any loss that the S corporations may have incurred, let alone the amount of any loss that passed through to petitioners.

All arguments made by the parties and not discussed herein have been rejected as meritless.  To reflect concessions,

<u>Decision will be</u>

<u>entered under Rule 155</u>.