T.C. Memo. 2012-338

UNITED STATES TAX COURT

HOWARD B. EFRON, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22113-10.                    Filed December 4, 2012.

<u>Kenneth R. Cohen</u>, for petitioner.

<u>Robert W. Mopsick</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioner, while residing in New Jersey, petitioned the Court

to redetermine respondent's determination of a deficiency of $15,478 and an

[*2] addition to tax under section 6651(a)(1)[1] of $2,908 with respect to his 2005

Federal income tax return. After respondent's concessions, as summarized in our

findings of facts, we decide the following issues: (1) whether petitioner is entitled

to trade or business expense deductions for 2005 in addition to those respondent has

allowed. We hold that he is to the extent stated in the opinion; (2) whether

petitioner is entitled to a net operating loss (NOL) deduction claimed on his 2005

return. We hold that he is not; and (3) whether petitioner is liable for an addition to

tax under section 6651(a)(1) for his failure to timely file the 2005 return. We hold

that he is.

                    FINDINGS OF FACT

The parties filed with the Court a stipulation of facts and related exhibits. The

stipulated facts and the accompanying exhibits are incorporated herein by this

reference. We find the facts accordingly.

A graduate of Michigan State University with a degree in audio/video

engineering and broadcast management and business, petitioner has worked in

different capacities in the music industry for the last three decades. Throughout the

1980s, petitioner worked as a salaried employee and administrative assistant

---

[1]Unless otherwise indicated, section references are to the Internal Revenue
Code (Code) in effect for the year at issue, and Rule references are to the Tax Court
Rules of Practice and Procedure. Some dollar amounts are rounded.

[*3] for several record labels, such as Epic Records and Warner Elektra Records, in order to obtain insights into the record business and to become established in the industry. Petitioner also collaborated with various recording artists, and in the summer of 1981 he was the lead guitarist for the band Blondie. Starting in the 1990s, petitioner began to focus his career on becoming a music artist and selling independent records. By the late 1990s petitioner worked with Peter Stougaard, the "senior vice president of creative" for Fox movies, to produce one of petitioner's first records, and subsequently sold between 5,000 and 10,000 copies of it in 30 to 40 record stores across the New York metropolitan area. To further his business goals and with advice from his entertainment attorney, petitioner created ZFL Entertainment, LLC (ZFL Entertainment), and ZFL Music, LLC, in 2004 to produce and publish music.[2] During the years at issue, petitioner also worked part time as a licensed dentist one to three days per week to supplement his music career.

With the advent of digitized music production providing a cost-effective way to produce music at home, petitioner purchased a house in 2003 in Wanaque, New Jersey (Wanaque), to both establish a residence and build a recording studio to be used exclusively for music production under ZFL Entertainment. After

---

[2]ZFL Music, LLC, is not at issue in this case.

**[*4]** consulting with different engineers and experts, petitioner constructed the recording studio in his Wanaque home and equipped it with professional hardware and software to produce music.

Another aspect of petitioner's music production business was to scout for musical talents. Since the early 2000s he has signed a number of musicians and worked with them to promote their work. Petitioner also solicited help from a seasoned record producer, Richard Keller, and a songwriter, Ronny Maggette, to promote these artists. Messrs. Keller and Maggette worked with petitioner under split-fee arrangements to promote musicians who they believed had profit potential. On separate occasions Messrs. Keller and Maggette provided petitioner marketing and technical advice as to how to bring these artists to their audiences through the Internet and digital music formats. They also introduced petitioner to executives at different studios and record labels so that petitioner could secure record deals for his musicians. Under the split-fee arrangements, or split sheets as they were commonly referred to in the industry, Messrs. Keller and Maggette would earn royalties on the profits the musicians generated and sometimes an additional fixed fee for each song produced.

In 2003 petitioner discovered a Brazilian band, Carne Loca, during a business trip to Brazil relating to his dentistry business. Petitioner subsequently

[*5] presented a demo tape of Carne Loca to Mr. Keller who, in recognizing the band's talents, agreed to partner with petitioner under a split-fee arrangement to promote the band. In 2004 petitioner entered into an exclusive personal service agreement with Carne Loca to produce records and arrange for live performances. In order to penetrate the Brazilian market, Mr. Keller introduced petitioner to his contacts in New York who in turn introduced petitioner to executives of record labels in Brazil. In 2005 petitioner traveled to Brazil and met with executives of these record labels in an attempt to obtain Carne Loca recording contracts with these labels. The project involving Carne Loca, however, met with mixed success.

On November 30, 2007, petitioner filed his Federal income tax return for 2005. Attached to the return was a Schedule C, Profit or Loss From Business, for ZFL Entertainment on which petitioner reported gross income of $4,094 and total expenses of $48,837, including (1) car and truck expenses of $2,215; (2) contract labor expenses of $155; (3) a depreciation expense of $19,805; (4) cost of insurance of $627; (5) "other interest" of $327; (6) legal and professional expenses of $330; (7) repairs and maintenance expenses of $1,164; (8) travel expenses of $3,981; (9) meals and entertainment expenses of $1,166; (8) "other expenses" of $2,750, a portion of which was attributable to petitioner's use of a cellular phone during his business trip in Brazil; and (10) $16,317 for the business use of his

[*6] home.  The 2005 return also claimed a deduction for a net operating loss (NOL) carryover from 2004 of $17,021.

On July 20, 2010, respondent issued to petitioner a notice of deficiency for 2005.  In the notice respondent disallowed petitioner's business expense deductions relating to ZFL Entertainment because, as respondent determined, ZFL Entertainment was not a business entered into for profit within the meaning of section 183 and petitioner in any event had failed to establish the expenses were ordinary and necessary expenses incurred in carrying on that venture.  Respondent also determined petitioner was not entitled to the NOL carryover from 2004 because petitioner did not establish that he incurred any such deductible loss.  Further, respondent determined petitioner was liable for an addition to tax of $2,908 for failure to timely file under section 6651(a)(1).  Petitioner timely filed a petition with the Court to challenge respondent's determinations.

The parties went to great lengths at trial to examine whether in 2005 ZFL Entertainment was a profit-seeking venture as it appeared that respondent's deficiency determination relied heavily and primarily on the section 183 limitation on losses from activities not engaged in for profit.  But in his posttrial brief respondent conceded that for 2005 ZFL Entertainment was a business engaged in for profit.  Respondent has also conceded that petitioner has substantiated the

[*7] following business expenses of ZFL Entertainment: (1) car and truck expenses of $99; (2) depreciation deductions of $9,287; (3) cost of insurance of $627; (4) legal and professional expenses of $330;[3] (5) repairs and maintenance expenses of $876; (6) travel expenses of $3,981; (7) meals and entertainment expenses of $1,166; (8) postage of $394; and (9) a deduction for 37.5% of mortgage interest and property taxes, or $14,686, for the business use of petitioner's home.[4]

OPINION

I.     Deductions

Deductions are a matter of legislative grace, and a taxpayer bears the burden of producing sufficient evidence to substantiate any allowable deduction under the Code. Sec. 6001; Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), Income Tax Regs. Section 162(a) allows a taxpayer to deduct ordinary and necessary expenses paid or incurred during the taxable year in

---

[3]On brief, respondent concedes that petitioner has substantiated legal and professional expenses of $330. Under the heading "Questions Presented" respondent questions whether petitioner is entitled to deduct legal and professional expenses of $330. Later in his brief, respondent again concedes petitioner has substantiated these expenses. We find respondent has conceded this expense item.

[4]See also infra note 6.

**[\*8]** carrying on a trade or business. Additionally, section 172 permits a taxpayer to deduct for the current taxable year an NOL incurred from another year.

Under the familiar Cohan rule, where a taxpayer is able to demonstrate that he or she has paid or incurred a deductible expense but cannot substantiate the precise amount, the Court may estimate the amount of the expense if the taxpayer produces credible evidence providing a reasonable basis for the Court to do so. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Section 274(d) supersedes the Cohan rule, however, in that it imposes stringent substantiation requirements for expenses related to listed property, which includes passenger automobiles and cellular phones.[5] Sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985); see also Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969). See generally sec. 280F(d)(4). In the ensuing discussion, where appropriate, we will identify the applicable substantiation standard used to analyze petitioner's claims.

---

[5]A cellular phone was considered listed property for the year at issue. Sec. 280F(d)(4) was amended by the Creating Small Business Jobs Act of 2010, Pub. L. No. 111-240, sec. 2043(a), 124 Stat. at 2560, effective for tax years beginning after December 31, 2009, which removed cellular phones from listed property.

**[\*9]** A.     Trade or Business Expense Deductions

As a result of respondent's concessions, we are left to decide whether petitioner is able to substantiate the following expenses ZFL Entertainment claimed as deductions for 2005:  (1) $2,116 of car and truck expenses; (2) $10,518 of depreciation expense; (3) $288 of repairs and maintenance expenses; (4) $1,631 for petitioner's business use of his home; (5) $155 of contract labor expenses; (6) $327 of "other interest" expenses; and (7) $2,356 of "other expenses."[6]  We address each in turn.

1.     Car and Truck Expenses

Car and truck expenses are subject to the strict substantiation requirements of section 274(d), and the Court may not apply the Cohan rule.  See Sanford v. Commissioner, 50 T.C. at 828-829; see also sec. 1.274-5T(a), Temporary Income Tax Regs., supra.  Under the section 274 regulations, in order to substantiate expenses relating to business use of automobiles, a taxpayer must provide

---

[6]Because respondent did not assert or make any argument at trial or on his posttrial brief that expenses petitioner reported on his 2005 return were neither ordinary nor necessary in carrying on ZFL Entertainment as a trade or business, respondent is deemed to have abandoned that position.  See Duncan Indus., Inc. v. Commissioner, 73 T.C. 266, 275 n.8 (1979).  In any event, there is ample evidence in the record to find that the expenses were ordinary and necessary business expenses.

**[*10]** adequate records to show: (1) the amount of each separate expense; (2) the mileage for each business use of the automobile and the total mileage for all purposes during the taxable period; (3) the date of the business use; and (4) the business purpose of the use. See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). In the absence of adequate records, such as an account book, a diary, a log, a statement of expenses, trip sheets, or a similar record, a taxpayer may substantiate expenses for mileage with sufficiently detailed written or oral statements and other collateral evidence establishing that the expenses were incurred. See sec. 1.274-5T(c)(2), (3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46016, 46020 (Nov. 6, 1985).

To substantiate the deduction relating to the business use of his vehicle, petitioner relies on a planner in which he describes his daily activities in 2005 that relate to his dentistry and music businesses. At trial, petitioner testified he prepared the planner in 2007 for respondent's field audit. According to petitioner, he was able to reconstruct the planner, which is essentially an activity log, because he was able to determine, using the parking and toll collection receipts that he collected in the ordinary course of business throughout 2005, when and where he conducted his business activities. The planner is reliable evidence as it

**[*11]** competently represents petitioner's business records. See Fed. R. Evid. 1006; see also id. 803(6).

The planner includes multiple entries showing the dates on which petitioner had traveled for business to New York, New York (New York City), Newark, New Jersey (Newark), and Paramus, New Jersey (Paramus). It shows petitioner traveled 7 times to New York City, 9 times to Newark, and 25 times to "Music Center" in Paramus in 2005. However, these entries do not tell us where the trips originated from and the miles traveled. They do not reveal the amounts of expenses actually incurred. It is also unclear whether petitioner made some of the trips to Newark for ZFL Entertainment or for his dentistry practice, as some of the entries tend to show petitioner had traveled to Newark for both.

Thus, the planner, despite its reliability as part of petitioner's business records, is insufficient to meet the stringent substantiation requirements under section 274(d) to prove the elements of an expenditure. Accordingly, we sustain respondent's determination with respect to petitioner's car and truck expenses.

### 2. Depreciation Deductions

Section 167 allows as a deduction a reasonable allowance for the depreciation of property used in a taxpayer's trade or business or held for the production of income. Under Cohan, we will analyze petitioner's depreciation

**[*12]** deduction claims if the record before us provides a reasonable basis to estimate the related expenses.[7]  We find that a depreciation schedule that petitioner's accountant prepared, coupled with petitioner's own testimony at trial, has provided such basis.

Respondent concedes petitioner is able to substantiate $9,287 of the $19,805 he claimed on his 2005 return but argues that petitioner has presented no evidence to substantiate a $10,518 depreciation expense for assets that petitioner purportedly placed in service in 2003 and 2004 for his music production business. Petitioner, on the other hand, unequivocally testified at trial that a report prepared by his accountant--"2005 Depreciation and Amortization Report, ZFL Entertainment, LLC" (2005 depreciation and amortization report)--accurately showed he acquired and placed in service 14 assets in 2003 and 2004 for his business (2003 and 2004 assets).  This report, stipulated by the parties,[8] provides the dates on which the assets were acquired, the depreciation method, the depreciable lives of the assets, and their cost bases.  This report also references

[7]The strict substantiation requirements under sec. 274(d)(4) do not apply because none of the property for which petitioner sought depreciation deductions was listed property.

[8]The report has been stipulated by parties into evidence only as "a true and correct copy of a document" as titled.  We do not understand respondent to have stipulated what the report purports to prove.

**[\*13]** another depreciation schedule claiming an additional $5,290 of deductions which petitioner, as respondent concedes, has independently substantiated. Additionally, the report lists three assets acquired and placed in service in 2005; respondent has also conceded in his posttrial brief that petitioner has provided receipts to substantiate these purchases. The 2005 depreciation and amortization report claims petitioner is entitled to a $10,518 depreciation expense deduction in addition to what respondent has allowed.

Thus, our resolution of this issue must turn on our perception of petitioner's credibility during his testimony at trial. As the trier of fact, we observe the candor, sincerity, and demeanor of each witness in order to evaluate his testimony and to assign weight to that testimony for the primary purpose of finding disputed facts. We determine the credibility of each witness, weigh each piece of evidence, draw appropriate inferences, and choose between conflicting inferences in finding the facts of a case. We will not simply accept a witness's uncontroverted testimony at face value unless we find that our impression of the witness coupled with our review of the credible facts at hand conveys to us an understanding consistent with the spoken word. See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 84-87 (2000), aff'd, 229 F.3d 221 (3d Cir. 2002).

**[*14]**    We found petitioner to be a credible witness throughout the trial and have little reason to doubt the veracity of his testimony that he acquired all the assets listed in the 2005 depreciation and amortization report.  With rare exceptions, petitioner has been able to substantiate his other expenses with documents and receipts that he diligently keeps in the course of his business.  Where he was unable to provide records to support his deduction claims, he did not hesitate to admit so. The 2005 depreciation and amortization report itself provides detailed information on the assets' acquisition dates and cost bases.  In fact, respondent concedes that petitioner is able to produce receipts to substantiate $9,287 of the $19,805 shown in the report.  Thus, when viewed in the context of the entire record before us, petitioner's credible and unwavering testimony coupled with the report bears sufficient indicia of reliability that we find petitioner did substantiate the purchases shown in the report.  See Olken v. Commissioner, T.C. Memo. 1981-176, 41 T.C.M. (CCH) 1255, 1257 (1981); King v. Commissioner, T.C. Memo. 2006-112, 91 T.C.M. (CCH) 1206, 1212 (2006) (using taxpayer's credible testimony at trial as basis to estimate depreciable basis under Cohan in situation where taxpayers testified their records were destroyed by flood), aff'd, 252 Fed. Appx. 951 (11th Cir. 2007).

**[*15]** Accordingly, we find petitioner has met his burden to substantiate $10,518 of the depreciation deduction in excess of what respondent has conceded.

### 3. Repairs and Maintenance

Petitioner claims $288 of repairs and maintenance expenses in excess of respondent's concession. On brief, petitioner rests his claim on certain documents admitted into evidence. Some of these documents, however, appear to be only the equivalent of work orders or estimate requests, which cannot establish that petitioner actually incurred these expenses. Thus, we hold petitioner is entitled to deductions for repairs and maintenance only in the amount respondent has conceded, or $876.

### 4. Business Use of Home

Petitioner's 2005 return claimed he used 41.6762% of his home for ZFL Entertainment and was entitled to a deduction of $16,317. At trial, petitioner stated the original calculation inappropriately included the square footage of the basement, which petitioner did not end up using as part of his home studio because of how the basement's humidity affected the tuning of his instruments. Upon recalculation, petitioner informed the Court that he used 1,330 square feet of 3,545 square feet of his home, or 37.5%, exclusively for his music production business. In his posttrial brief, respondent concedes that petitioner used 37.5% of his home

**[\*16]** for ZFL Entertainment. Thus, the record shows the parties are in agreement that petitioner cannot--in fact, petitioner has declined to--substantiate an amount of deduction for business use of his home in excess of what respondent has conceded. Thus, we hold petitioner is entitled to deduct $14,686 for the business use of his home.

### 5. Contract Labor Expenses

On brief, petitioner states that the contact labor expense item is a cash payment which he does not have a receipt to substantiate. Without any basis to estimate this expense under Cohan, any allowance of that expense would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). Thus, the Court sustains respondent's determination with respect to this expense.

### 6. Interest Expenses

Petitioner also acknowledges that he did not substantiate at trial the interest expense that he reported on the 2005 return. Nothing in the record can provide a basis on which the Court may estimate this expense under Cohan; thus the Court sustains respondent's determination. See Cohan v. Commissioner, 39 F.2d at 544.

**[*17]**     7.     Other Expenses

Respondent contends that petitioner cannot substantiate $2,356 of "other expenses." Petitioner's 2005 return claims as deductions the following "other expenses": (a) $1,369 for telephone and communications, (b) $920 for costumes and clothes, (c) $394 for postage, and (d) $67 for miscellaneous items. Respondent has conceded that petitioner expended $394 for postage.

On brief, petitioner states that the telephone and communications expenses encompass $832.16 of telephone charges and that the miscellaneous items include a fee for his Web site ($64.95) and a charitable contribution to Music for Life Charity ($2); petitioner acknowledges he has not provided substantiation for these expenses. Petitioner claims, however, certain receipts in evidence support (i) the balance of his telephone and communications deduction which represents charges for cellular phone calls he made when he was in Brazil to promote Carne Loca, and (ii) $920 spent on clothes for the band.

     a.     Telephone and Communications

With respect to the $832.16 of telephone charges, the Court sustains respondent's disallowance of any deduction for these charges because petitioner failed to substantiate this expense item at trial and nothing in the record before us

[*18] would provide a reasonable basis for the Court to credit petitioner under Cohan.[9]  See id.

With respect to petitioner's cellular phone expenses incurred during his business travel to Brazil, the Court finds that petitioner has substantiated the claimed expenses under the heightened substantiation requirements of section 274(d).  As in the case of business use of automobiles, a cellular phone is listed property and petitioner must provide adequate records to support the elements of a business expenditure.[10]  See sec. 1.274-5T(b) and (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014, 46016 (Nov. 6, 1985).

To support his claim, petitioner offers copies of the prepaid phone cards purchased in Brazil and their receipts, which are highly probative because they were collected by petitioner at the time of the expenditure.  Petitioner also testified credibly that all the expenses incurred in Brazil were related to ZFL Entertainment.  Thus, petitioner's documentary evidence coupled with his testimony has proved to the Court's satisfaction the amount of the cellular phone expenditure, the amount of business use (i.e., 100%) compared to personal use

[9]A telephone, as opposed to a cellular phone, is not listed property and not subject to the strict substantiation requirements of sec. 274(d).  See Sherrer v. Commissioner, T.C. Memo. 2011-198, 102 T.C.M. (CCH) 173, 175 (2011).

[10]See supra note 5.

[*19] (i.e., 0%), the time and date of the expenditure (i.e., during petitioner's business trip to Brazil from March 8 to April 5, 2005), and the business purpose of the expenditure (i.e., promotion of Carne Loca in Brazil). See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., supra.

Accordingly, petitioner is entitled to deduct 1,523 Brazilian reals (BR) for the cellular phone expenses incurred in Brazil.[11]

### b. Costumes and Clothing

Costumes and clothing are not listed property under section 274(d); the Court may estimate the expense under Cohan. To support his claim, petitioner provides a receipt from a foreign currency exchange in São Paulo which shows he exchanged $800 for BR; the receipt is marked with a handwritten note "Clothes Band." At trial, the Court admitted the receipt into evidence as petitioner's business record. See Fed. R. Evid. 803(6). Petitioner's testimony also corroborated what the receipt was offered to prove. Thus, we find the receipt sufficient to substantiate $800 of business expenses for costumes and clothes.[12]

---

[11]The amount in U.S. dollars which petitioner is entitled to deduct shall be computed using the BR-U.S. dollar currency exchange rate in effect on the relevant date.

[12]Clothing and costumes expenses are deductible under sec. 162(a) if the clothing and costumes are: (1) specifically required as a condition of employment;

(continued...)

**[\*20]**            c.        Miscellaneous Items

Petitioner concedes he did not substantiate at trial the miscellaneous items, which according to petitioner's posttrial brief include a fee for his Web site ($64.95) and a charitable contribution to Music for Life Charity ($2). Without any evidence, the Court is unable to estimate the expense under Cohan. See Williams, 245 F.2d at 560. Accordingly, we sustain respondent's determination.

B.        NOL Deduction

Section 172 allows a taxpayer to deduct an NOL for a taxable year. The amount of the NOL deduction equals the sum of the NOL carryovers plus NOL carrybacks to that year. Sec. 172(a). Absent an election to the contrary, an NOL for any taxable year must first be carried back 2 years and then carried over 20 years. Sec. 172(b)(1)(A). A taxpayer claiming an NOL deduction bears the

---

[12](...continued)
(2) not adaptable to general usage as personal clothing; and (3) not worn as personal clothing. Yeomans v. Commissioner, 30 T.C. 757, 767-769 (1958). Petitioner's testimony supports the finding that the clothing was purchased for Carne Loca's live music performances in Brazil. No contention is made that the clothing was either adaptable to personal use or in fact worn as personal clothing. See Nelson v. Commissioner, T.C. Memo. 1966-224, 25 T.C.M. (CCH) 1142 (1966) (finding clothing expenses deductible by taxpayers who bought clothing for acting in television series, where record before Court did not indicate personal use). Indeed, respondent does not argue on brief that petitioner's expenses, if substantiated, are not otherwise deductible. Thus, as we have stated elsewhere in this opinion, we deem respondent to have waived the argument. See supra note 6.

**[\*21]** burden of establishing both the existence of the NOL and the amount of any NOL that may be carried over to the subject years. Rule 142(a)(1); United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235 (1955); Green v. Commissioner, T.C. Memo. 2003-244, 86 T.C.M. (CCH) 273, 274-275 (2003). As part of meeting that burden, the taxpayer must file with his return for that year a concise statement setting forth the amount of the NOL deduction claimed and all material and pertinent facts, including a detailed schedule showing the computation of the NOL deduction. Sec. 1.172–1(c), Income Tax Regs.

Thus, to support the claimed NOL deduction carried over from 2004, petitioner must be able to prove, first, that he incurred an NOL in 2004 and, second, that a portion of that NOL is properly deductible for 2005. For the NOL from 2004 to be properly deductible for 2005, petitioner must show either that it was not fully used in the two carryback years (i.e., 2002 and 2003) or that he elects under section 172(b)(3) to waive the carryback of the NOL. See sec. 172(b)(1)(A); Lassiter v. Commissioner, T.C. Memo. 2002-25, 83 T.C.M. (CCH) 1139, 1140-1141 (2002).[13]

---

[13]In Lassiter v. Commissioner, T.C. Memo. 2002-25, 83 T.C.M. (CCH) 1139 (2002), we interpreted sec. 172(b)(1)(A) as it applied to net operating losses for tax years beginning on or before August 5, 1997, where the section required a 3-year carryback and a 15-year carryover. Although sec. 173(b)(1)(A) has since been amended to require a 2-year carryback and then a 20-year carryover, our analysis relating to the sequencing of carrybacks and carryovers continues to apply in full

(continued...)

**[\*22]**     Petitioner has not met his burden to establish that he meets any of these requirements.  The 2005 return does not include the statement and the schedule required by the regulation.  Nor did petitioner offer any testimony at trial to support the claimed NOL deduction.  As far as income and losses incurred before 2005 are concerned, the record before us includes only petitioner's 2004 Federal income tax return and an unexecuted amended 2004 Federal income tax return.  The return as amended claims a loss of $17,021 but does not include any schedules to explain how petitioner has arrived at his gross income and deductions.[14]  Even if we take the purported 2004 NOL on its face, the record lacks the necessary information to establish whether any portion of the loss would be properly deductible for 2005 since we do not know whether there was any income for 2002 or 2003 to absorb the loss.  Accordingly, we sustain respondent's

---

[13](...continued)
force to the section as amended.  See, e.g., Esrig v. Commissioner, T.C. Memo. 2012-38, 103 T.C.M. (CCH) 1206, 1208 (2012).

[14]The amended 2004 return states under "Explanation of Changes to Income, Deductions, and Credits" that an amended Schedule C is enclosed.  However, the parties did not submit the amended Schedule C into evidence.

**[*23]** determination to disallow the NOL carryover deduction for 2005.[15] See

Green v. Commissioner, 86 T.C.M. (CCH) at 276.

II.      Section 6651(a)(1) Penalty

Petitioner's posttrial brief does not advance any argument or theory as to why

the Court should not hold him liable for the addition to tax under section 6651(a)(1)

for the late filing of his 2005 return.  Nor has petitioner articulated any basis during

trial or after trial on which the Court should find him not liable for the addition to

tax.[16]  Because petitioner has not proffered any evidence or advanced any argument

to show his failure to timely file the 2005 return was due to reasonable cause and

not willful neglect, we deem petitioner has conceded the issue and sustain

respondent's determination that petitioner is liable for an addition to tax under

section 6651(a)(1).  See Zapara v. Commissioner, 124 T.C. 223, 233 (2005), aff'd,

652 F.3d 1042 (9th Cir. 2011).

---

[15]To the extent the NOL is otherwise allowed, we do not intend our holding to limit petitioner's ability to deduct his NOL from 2004 in the carryback years or any other carryover year.

[16]In his pretrial brief, petitioner asserts that if the Court allowed the deductions claimed on his 2005 return, there would be no tax liability on which an addition to tax may be assessed under sec. 6651(a)(1).  However, petitioner's assertion fails to take into account that income from his dentistry business exceeds any losses incurred from his music production business.  Thus, there will be a positive income resulting in tax liability on which an addition to tax can be assessed.

**[\*24]**  We have considered all of petitioner's arguments for a contrary holding, and to the extent not discussed herein we conclude they are irrelevant, moot, or lacking in merit.

To reflect the foregoing and the parties' concessions,

<u>Decision will be entered</u>

<u>under Rule 155</u>.