T.C. Memo. 2009-168

UNITED STATES TAX COURT

LELAND B. AND BRENDA J. BRUNS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6881-07.                    Filed July 14, 2009.

<u>Kathryn Barnhill</u>, for petitioners.

<u>Catherine S. Tyson</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a $10,695 deficiency
in and a $2,139 section 6662(a)[1] penalty on petitioners' 2003
Federal income tax.  The issues for decision are:  (1) Whether

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

petitioners are entitled to deductions claimed; and (2) whether petitioners are liable for the accuracy-related penalty under section 6662(a).

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. At the time they filed the petition, petitioners resided in South Dakota.

Petitioner Brenda Bruns (Mrs. Bruns), Joetta Swanhorst (Mrs. Bruns's mother), and Heather Mitzel (petitioners' daughter) are the partners of ABS Associates (ABS).[2] Mrs. Bruns is entitled to 100 percent of the profits and losses of ABS. Petitioner Leland Bruns (Mr. Bruns) is not a partner of ABS.

ABS is an independent distributor of Shaklee Corp. (Shaklee), which produces nutritional and cleaning products. The Shaklee business model allows distributors of products to earn income in three ways: (1) Distributors earn income from purchasing Shaklee products at a wholesale price and reselling them at a higher price; (2) distributors are paid commissions on

---

[2] ABS is not subject to the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA) partnership audit and litigation rules. See sec. 6231(a)(1)(B) (the partnership ABS had 10 or fewer partners and all partners were natural persons and U.S. citizens).

the purchases of distributors in their group;[3] and (3) distributors receive bonuses on the purchases of leaders they develop. Leaders are distributors who generate sales of $2,000 per month or more. ABS is a leader, has developed 12 leaders, and has approximately 500 to 600 customers, not counting the customers of other distributors or leaders that ABS trained.

ABS holds customer meetings to look for potential distributors. In the lower level of petitioners' personal residence, petitioners keep a small inventory of Shaklee products, equipment, and sales aides used in training and development. Customers and distributors come to the lower level of petitioners' home to get products and receive coaching.

During 2003 ABS earned $77,547 from its activities related to the distribution of Shaklee products.[4] On Form 1065, U.S. Return of Partnership Income, ABS reported gross income of $78,570 and net income of $60,570 after taking an $18,000 deduction for rent paid. All income from ABS was distributed to Mrs. Bruns, and she reported this income on petitioners' 2003 Form 1040, U.S. Individual Income Tax Return.

---

[3] Each distributor has a group of customers. A customer may get discount buying privileges by paying a fee to become a member or distributor. Once the customer becomes a distributor, the customer-distributor is in the group of his original distributor and starts a group of his own.

[4] Respondent does not dispute the income to Mrs. Bruns from ABS.

Schedule C Expenses

On petitioners' Schedule C, Profit or Loss From Business, attached to their 2003 Form 1040, petitioners claimed expenses of $44,975 paid during 2003, which resulted from Mrs. Bruns' work for ABS in the distribution and sale of Shaklee products. Petitioners were issued a notice of deficiency that disallowed some of the expenses claimed on that Schedule C. The following is a table of reported expenses, the amount of each expense allowed after examination, and the amount disallowed:

| Item | Amount Claimed | Allowed | Disallowed |
|------|---------------|---------|------------|
| Advertising | $4,854 | $1,361 | $3,493 |
| Car and truck expenses | 2,238 | 798 | 1,440 |
| Commissions and fees | 495 | 495 | -- |
| Contract labor | 1,490 | -- | 1,490 |
| Depreciation | 1,500 | 1,500 | -- |
| Insurance | 47 | 47 | -- |
| Other interest | 101 | 101 | -- |
| Legal and professional services | 679 | 679 | -- |
| Business (office) expenses | 9,545 | 1,331 | 8,214 |
| Rent or lease--vehicle, machinery, and equipment | 5,968 | 3,647 | 2,321 |
| Taxes and licenses | 635 | 635 | -- |
| Travel | 4,253 | 2,526 | 1,727 |
| Meals and entertainment | 2,582 | 1,192 | 1,390 |
| Other expenses | [1]10,588 | 8,588 | [2]2,000 |
| Total | 44,975 | 22,900 | 22,075 |

[1] This amount is the total of the following claimed business expenses: Freight postage expenses of $988, business phone expenses of $4,684, cleaning expenses of $175, books/ publications subscription expenses of $304, meeting expenses of $952, sales aids expenses of $1,390, bank charge expenses of $95, and image expense of $2,000.

[2] This disallowed amount is the complete disallowance of petitioners' claimed "image" expense of $2,000.

## 1. Advertising Expenses

Petitioners claimed deductions for advertising expenses of $4,854; respondent allowed $1,361 and disallowed $3,493. The $1,361 deduction allowed includes $500 respondent determined petitioners were entitled to for advertising-related gifts worth $25 apiece to 20 individuals.

Shaklee leaves advertising up to distributors and does not advertise or market its products. ABS does not advertise in the phonebook or on the Internet; instead, Mrs. Bruns goes out and meets customers' families and friends to sell Shaklee products. She then rewards customers who go out and talk up the product, who have provided consistent business or increased their volume of products sold, and who have been willing to introduce her to their families and friends. As a reward Mrs. Bruns will give books, movies, cards, jewelry, flowers, and food. Mrs. Bruns' reward criteria are that the person be a good referral source, love the products, and be a consistent customer. Petitioners provided photocopies of receipts for gifts purchased by Mrs. Bruns and substantiated gifts to 26 individuals.

Additionally, ABS paid to have newsletters, flyers, and pictures printed. Mrs. Bruns took pictures at Shaklee-related meetings and when she met with different groups of Shaklee customers, distributors, and leaders. She then sent the photos over the Internet and used them in presentations to show sales

leaders' achievements with their group members.  Petitioners submitted photocopies of receipts and invoices from Harold's Photo Centers, Office Max, Vista Print, and Express Copy & Printing for copies, a Nikon camera with accessories, photo development costs, and shipping labels.  The receipts total $699.13.  The camera purchased by ABS is used only for taking pictures of customers and has never been used by petitioners for personal purposes.

## 2.  Car and Truck Expenses

Mrs. Bruns drove a passenger vehicle to and from activities related to the distribution and sale of Shaklee products. Petitioners claimed deductions for car-related expenses of $2,238; respondent allowed $798 and disallowed $1,440.

Petitioners submitted photocopies of gasoline receipts, carwash receipts, and car repair/maintenance invoices and receipts. The gasoline receipts total $1,132.49, the carwash receipts total $115.20, and the car repair/maintenance invoices and receipts total $102.84.

## 3.  Contract Labor Expenses

Petitioners claimed deductions for contract labor expenses of $1,490, and respondent disallowed the full amount.  At trial petitioners conceded they are entitled only to a $910 deduction for contract labor.

To substantiate the expenses for contract labor, petitioners submitted a Quicken printout that showed payments totaling $1,489.66 made to Robin Berg on numerous occasions, Cournie Gunderson on 1/14/03, Michelle Bruns on 2/1/03, Robin Ramsey on 3/21/03, Richie Clary on 4/16/03, and Brandon Carpet Cleaning on 11/15/03. Petitioners hired Robin Berg to clean their office and living space. No invoices or canceled checks were submitted to prove payment of contract labor expenses.

4. Business Expenses

Petitioners claimed deductions for business expenses of $9,545 incurred by Mrs. Bruns in distributing and selling Shaklee products; respondent allowed $1,331 and disallowed $8,214.

Petitioners submitted photocopies of receipts totaling $7,619.17 to substantiate their claimed business expenses of $9,545. Petitioners submitted receipts for furniture, a portable CD player with speakers, supplies, refreshments, and decorations used by Mrs. Bruns in her role as a Shaklee salesperson. The furniture receipts were for display cases, storage and file cabinets, a table, a rubber floor cover, and a chair. There was a receipt for a portable CD player with speakers Mrs. Bruns used for training herself and others about Shaklee products when at home and when traveling. The supplies receipts were for pens, paper, tape, printing costs, and various other items. Petitioners also submitted receipts for refreshments, such as

coffee and candy that Mrs. Bruns offered to customers, and receipts for seasonal decorations Mrs. Bruns put up in the space she devoted to meeting with customers and displaying Shaklee products.

Although Mrs. Bruns often delivers Shaklee products to customers and meets with Shaklee distributors and leaders at restaurants, she does have customers, distributors, and leaders stop by her home.  She maintains and displays a small inventory of Shaklee products in her home, and she receives and stores Shaklee products ordered by customers.  Further, Mrs. Bruns keeps a desk and file cabinets which store Shaklee distribution and sales information.  In another cabinet she stores Shaklee training tapes, CDs, and sales aids.  Adjacent to that cabinet is a table used for customer appointments and business planning with distributors and leaders.

5.  Rent or Lease--Vehicle, Machinery, and Equipment

Petitioners claimed and deducted vehicle leasing expenses of $5,968; respondent allowed $3,647 and disallowed $2,321.  As a result of ABS' high volume of sales in 2003, ABS qualified for and participated in a car bonus program where ABS selected a car from Shaklee's lease program.

Petitioners submitted monthly statements issued by Shaklee to ABS from December 2002 through November 2003.  On each statement ABS earned a monthly $400 car bonus credit and incurred

a monthly lease charge of $702.21 and a monthly insurance charge of $88.20. ABS paid these charges in advance (i.e., in December 2002, ABS made lease payments for January 2003).

ABS' participation in the Shaklee bonus program resulted in a monthly car lease and insurance cost of $790.41 to ABS at a yearly cost of $9,484.92. This amount was subtracted from the direct deposit to ABS from Shaklee each month after the $400 car bonus was added as earnings. If ABS had not participated in Shaklee's car leasing program, ABS would have received $400 per month in cash.

Petitioners drove two other vehicles in addition to the ABS car and reported having occasionally driven the ABS car for unrelated business matters. The ABS car was driven a total of 23,550 miles in 2003 and the total number of business miles petitioners claimed the car was driven in 2003 was 18,755. Mrs. Bruns calculated 79 percent business use for the car.

Petitioners submitted a 2003 mileage log, a 2003 daily planner, and a list of abbreviations used in the mileage log and the daily planner. The mileage log lists the destination to which Mrs. Bruns drove, the person Mrs. Bruns met with, the miles driven to arrive at the location, and an abbreviation of the business purpose for the meeting. The business purposes stated included leaving information (such as literature or CDs), conducting a demonstration of products, delivering products,

orienting new members, and conducting an overview of business with distributors and sales leaders. The mileage log reported 18,242 miles traveled for 2003 but failed to list the business purpose for 1,266 of the reported miles traveled.

6. Travel Expenses

Petitioners claimed deductions for travel expenses of $4,253; respondent allowed $2,526 and disallowed $1,727. Petitioners' Quicken printout reported travel expenses of $2,770.16. To substantiate the travel expenses, petitioners provided photocopies of receipts from hotel stays and a receipt from a travel agency. Because ABS has no territorial limitations, many of its customers are in States other than South Dakota. Petitioners wrote on the top of each photocopied receipt the purpose for the trip. The total of the photocopied receipts is $2,464.60. However, some of the receipts were missing a date, and one receipt was in Mr. Bruns' name.

Respondent disallowed expense deductions for a trip for petitioners to see Kim and Mike Bruns, relatives and distributors for ABS. Respondent disallowed expense deductions for a trip to see Mrs. Bruns' mother, Joetta Swanhorst, a "bonus earner" for ABS who lives in a retirement community in Aberdeen, South Dakota. Petitioners seek to deduct the cost of a three-night hotel stay in Aberdeen, South Dakota. Respondent disallowed expense deductions for a trip to meet with Lori Kimball, a "bonus

earner" for ABS who lives in Minnesota.  Petitioners stayed in a hotel near her to spend time with her while they were in Minneapolis and provided a photocopy of a hotel receipt for $168.36 for two nights.  Respondent disallowed expenses incurred in petitioners' overnight stay at the Radisson Encore Hotel on December 26, 2003. It was an "award bonus weekend" where petitioners stayed with six other persons, including petitioners' daughter, and shared with them the possible business opportunities in distributing Shaklee products.  ABS paid for petitioners' and their daughter's rooms.  Petitioners provided photocopies of their receipts for two rooms at the rate of $80.66 per night for staying overnight on December 26, 2003.

Petitioners claimed a deduction of $144.15 for luggage used to carry Shaklee samples and supplies and submitted as substantiation a receipt that was missing the date of purchase and had no description of the item.

Petitioners claimed a deduction of $201.40 for a handbag and a coin purse used to carry sales cards, name tags, and business cards.  Petitioners provided photocopies of two receipts for $71.02 and $130.38; neither receipt contained a description of the items purchased.

7.  Meals and Entertainment Expenses

Petitioners claimed a deduction of $2,582[5] for meals and entertainment expenses in 2003; respondent allowed $1,192 and disallowed $1,390.  At trial Mrs. Bruns conceded that petitioners were entitled to a deduction of only $2,195 because she had realized her husband was not a partner of ABS and his meals were not deductible.

To substantiate the meals and entertainment expense deductions, petitioners submitted photocopies of receipts from restaurants and grocery stores and a list of abbreviations used by Mrs. Bruns to reference the purpose of the meal.  At the top of most of the receipts, Mrs. Bruns wrote a specific business purpose for incurring the expense.  The business purposes included trips into Sioux Falls for Shaklee sales-related errands, nutrition talks, catalog presentations, leaving literature, business meetings with other Shaklee groups or leaders, product delivery or exchanges, bookkeeping, Shaklee products opportunity meetings (to attract new distributors), member orientations, appreciation of members, and delivering voice CDs about Shaklee products and about becoming a Shaklee distributor.

---

[5]  The $2,582 deduction is 50 percent of claimed meals and entertainment expenses of $5,164.

The receipts petitioners submitted total $3,429.58. However, many of the receipts did not show proof of payment, lacked the date, or did not have a specific business purpose listed for the expense.

Some of the receipts from restaurants were for meals costing less than $10. Mrs. Bruns admitted one of the receipts for a meal costing $9.60 was only for her meal although she did have the meal with a customer.

## 8. Other Expenses

Petitioners claimed deductions for other expenses of $10,588. Respondent disallowed an expense of $2,000 that petitioners incurred for "image".[6] Mrs. Bruns explained that the expense for product promotion reflected the cost of various products that she took from the inventory of ABS after it purchased them from Shaklee and that Mrs. Bruns personally tried, let others try, or gave away at gatherings. Mrs. Bruns personally tried new products to see whether she believed in the product and to figure out a way to promote it. Mrs. Bruns admitted some of the products were used for her personal care.

In substantiating the claimed product promotion expense, petitioners submitted two invoices listing the product, the quantity, and the price of the item used for product promotion.

---

[6] We take "image" to mean product promotion and shall refer to it as such.

The invoices showed that petitioners had used $6,822.24 in products.  However, Mrs. Bruns asked the Court to disregard $1,124.76 worth of products listed on the invoice because they had been used for personal care. Petitioners claimed a deduction for product promotion after taking certain numbers from the two invoices and rounding the number to $2,000.  In picking which items were used for personal care and which were used as demo products, Mrs. Bruns made an educated guess.

Schedule E Expenses

On Schedule E, Supplemental Income and Loss, petitioners reported $18,000 of alleged rents received from ABS and related expenses of $3,471.  The notice of deficiency disregarded the alleged rental agreement, decreased rents received by $18,000, and disallowed expenses claimed of $3,471.  The notice of deficiency increased petitioners' other income by $18,000 to reflect the disregarded rental agreement.  In disregarding the alleged rental of petitioners' home to ABS, the income of the partnership was increased by $18,000.  Since Mrs. Bruns was entitled to 100 percent of the partnership's income and expenses, her income from the partnership was increased by $18,000 in 2003.

ABS allegedly leased premises owned by petitioners for $1,500 a month.  Petitioners and ABS had a month-to-month oral agreement in 2003, and ABS allegedly had leased space from petitioners for 13 or 14 years.  ABS wrote monthly rent checks to

Mr. Bruns.  To substantiate this expense, petitioners submitted photocopies of checks written to Leland Bruns on or around the 15th of every month for the year 2003.

On the Schedule E for 2003, petitioners claimed expenses of $3,471 arising from the leasing arrangement.  The expenses were as follows:  Insurance $358, taxes $1,092, utilities $1,150, and depreciation $871.  The insurance, taxes, and utilities expenses were calculated by multiplying the annual amount for the house by 40 percent, the approximate percentage of the lease space ABS occupied in the house.

Petitioners established the monthly rent charged to ABS by visiting spaces in the community that were smaller than the space ABS rented from petitioners.  The rents of the smaller spaces were approximately $9 to $13 per square foot.  Petitioners measured the area ABS leased to be approximately 1,400 square feet and charged a little over $1 per square foot.

In the space ABS allegedly rented there is a meeting space and a working area.  In the meeting area there is a TV for presentations, and it is connected to cable.  There is no door or lock which separates the area used by ABS from the other part of the house.  ABS allegedly uses the space for Mrs. Bruns to meet with clients, hold meetings, and sell products.  However, Mr. Bruns and Mrs. Bruns occasionally watch entertainment shows,

sports, and news on the television in the meeting area.  Mr. Bruns has access to the meeting area.

Schedule A Deductions

On Schedule A, Itemized Deductions, petitioners claimed itemized deductions totaling $9,793 for taxes paid, gifts to charity, tax preparation fees, and safe deposit expenses. Petitioners claimed a deduction of $7,353 for alleged gifts to charity.  The notice of deficiency disallowed $945 of the claimed gifts to charity.  After a concession by petitioners of $51.02, $893.98 of claimed gifts to charity remains in dispute.

The standard deduction for petitioners in 2003 was $9,500. The itemized deductions allowed in the notice of deficiency do not exceed the standard deduction to which petitioners are entitled.  Accordingly, the notice of deficiency allowed the standard deduction.

To substantiate the disallowed gifts to charity, petitioners submitted a letter from their church, Abiding Savior Free Lutheran Church, stating that they had donated a baking rack in November of 2003 and an invoice from Furniture Discounters stating they had paid $423.98 for a new baking rack to be delivered to their church.

Petitioners also claimed cash gifts of $470 made in 2003. Petitioners allegedly made these donations in amounts of $20 or $30 at miscellaneous events that occurred throughout the year to

various organizations that asked Mr. or Mrs. Bruns for a donation. Petitioners did not provide any substantiation for the additional $470 cash donations claimed.

OPINION

I. <u>Burden of Proof</u>

In pertinent part, Rule 142(a)(1) provides, as a general rule: "The burden of proof shall be upon the petitioner". However, section 7491(a) places the burden of proof on the Commissioner with regard to certain factual issues. Petitioners have alleged section 7491(a) applies, and respondent bears the burden of proof. However, the burden of proof is inconsequential to the outcome of this case.

II. <u>Deficiency</u>

The Commissioner's determinations are generally presumed correct, and the taxpayer bears the burden of proving the determinations erroneous. Rule 142(a). The taxpayer bears the burden of proving that he is entitled to the deduction claimed, and this includes the burden of substantiation. <u>Id.</u>; <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). A taxpayer must substantiate amounts claimed as deductions by maintaining the records necessary to establish he or she is entitled to the deductions. Sec. 6001.

Section 162(a) provides a deduction for certain business-related expenses. In order to qualify for the deduction under

section 162(a), "an item must (1) be 'paid or incurred during the taxable year,' (2) be for 'carrying on any trade or business,' (3) be an 'expense,' (4) be a 'necessary' expense, and (5) be an 'ordinary' expense." Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352 (1971); see also Commissioner v. Tellier, 383 U.S. 687, 689 (1966) (the term "necessary" imposes "only the minimal requirement that the expense be 'appropriate and helpful' for 'the development of the [taxpayer's] business" (quoting Welch v. Helvering, 290 U.S. 111, 113 (1933))); Deputy v. du Pont, 308 U.S. 488, 495 (1940) (to qualify as "ordinary", the expense must relate to a transaction "of common or frequent occurrence in the type of the business involved"). Whether an expense is ordinary is determined by time, place, and circumstance. Welch v. Helvering, supra at 113-114. Respondent has not challenged the existence of ABS' Shaklee distributorship as a business and Mrs. Bruns' related activities in distributing and selling Shaklee products.

If a taxpayer establishes that he or she paid or incurred a deductible business expense but does not establish the amount of the expense, we may approximate the amount of the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, for the Cohan rule to apply, there must be sufficient evidence in the record to

provide a basis for the estimate.  Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).  Certain expenses may not be estimated because of the strict substantiation requirements of section 274(d).  See sec. 280F(d)(4)(A); Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969).

A.  Schedule C Expenses

1.  Advertising Expenses

In general, advertising expenses to promote a taxpayer's trade or business are deductible pursuant to section 162(a). Brallier v. Commissioner, T.C. Memo. 1986-42; sec. 1.162-1(a), Income Tax Regs.  Petitioners claimed advertising expenses of purchasing gifts for selected customers, printing a newsletter, and the purchase of a camera.

a.  Gift Expenses

The cost of gifts may be an ordinary and necessary business expense if the gifts are connected with the taxpayer's opportunity to generate business income.  Brown v. Commissioner, T.C. Memo. 1984-120 (finding similarly gifts not connected with taxpayer's opportunity to generate business income where taxpayer, physician employed by hospital, gave out Parker pens as promotional gifts because physician did not depend upon referrals for business); cf. Eder v. Commissioner, a Memorandum Opinion of this Court dated Feb. 10, 1950 (finding gifts were not connected with taxpayer's opportunity to generate business income where

taxpayer gave cosmetic sets to office workers employed by someone else and to telephone operators employed by someone else and paid monthly by taxpayer to put through calls and deliver messages). Mrs. Bruns has the burden of proving to what extent the gift items contributed to her income. See Sutter v. Commissioner, 21 T.C. 170, 173-174 (1953).

Business gift deductions pursuant to section 162 are restricted to $25 per donee per taxable year. Sec. 274(b)(1).

Further, section 274(d) requires adequate substantiation. A taxpayer claiming a deduction for a business gift is required to substantiate the gift with adequate records or sufficient evidence corroborating his own testimony as to (1) the cost of the gift; (2) the date and description of the gift; (3) the business purpose of the gift; and (4) the business relationship of the person receiving the gift. Sec. 1.274-5T(b)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Respondent allowed petitioners to deduct $25 per donee for gifts to 20 individuals.

Unlike the gifts in the situations in Eder and Brown, the gifts given were connected with opportunities for Mrs. Bruns to generate business. Gifts were given only to customers who were good referral sources, loved the products, and were consistent customers. The referrals and introductions Mrs. Bruns received from the gift recipients were to individuals who were not Shaklee

customers. Because of the dependence Mrs. Bruns placed on personal connections and interactions in distributing Shaklee products, these introductions were an important part of building the Shaklee customer base. Accordingly, the gifts given were an ordinary and necessary advertising expense of Mrs. Bruns in selling Shaklee products.

However, petitioners have failed to adequately substantiate every gift expense. Petitioners provided photocopies of receipts for items purchased for the purpose of making gifts, but many of the receipts were illegible as to the amount spent, the date of the purchase, or the item purchased. On the receipts which did contain such information, petitioners consistently failed to note the person to whom the gift was given, and many of the gifts exceeded the $25 restriction imposed by section 274(b). Petitioners have adequately substantiated advertising business gift expenses to 26 individuals and are entitled to a deduction of $650. This exceeds the amount allowed by respondent by $150 as we have allowed a deduction for gifts of $25 to 6 recipients in addition to the 20 recipients previously allowed by respondent.

### b. Newsletter and Camera Expenses

Petitioners have not provided the content of the newsletters or information as to how the printing of the newsletters is an

ordinary and necessary expense. Accordingly, we cannot allow a deduction for these printing expenses.

Mrs. Bruns received income (as allocated by ABS) in 2003 from the sales of Shaklee distributors and leaders under ABS. Mrs. Bruns stated she was constantly looking for new distributors and coaching distributors on becoming leaders. The photos taken by Mrs. Bruns of Shaklee sales gatherings and distributed among distributors and leaders in her group were a part of this coaching. The camera purchased by Mrs. Bruns was used exclusively for this business purpose. However, the useful life of the camera is greater than 1 year. Accordingly, she must capitalize the cost. See Best Lock Corp. v. Commissioner, 31 T.C. 1217, 1234-1235 (1959) (cost of catalogs with useful life of more than 1 year must be capitalized); Ala. Coca-Cola Bottling Co. v. Commissioner, T.C. Memo. 1969-123 (cost of signs, clocks, and scoreboards with useful lives of more than 1 year must be capitalized). Petitioners are entitled to a $62.15 deduction for the substantiated costs of printing photos and an allowable camera depreciation deduction. These are in addition to the amount respondent allowed.

## 2. Car and Truck Expenses

Petitioners claimed a deduction for car and truck expenses incurred in 2003 for gasoline, car washes, repairs, and maintenance on the vehicle leased and used for business purposes.

Petitioners claimed $2,238; respondent allowed $798 and disallowed $1,440.

Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Under that provision, an employee or a self-employed individual may deduct the cost of operating an automobile to the extent that it is used in a trade or business. However, under section 262 no portion of the cost of operating an automobile that is attributable to personal use is deductible.

A passenger vehicle is listed property under section 280F(d)(4). Section 274(d) disallows any deduction with respect to listed property unless the taxpayer adequately substantiates: (1) The amount of the expense, (2) the time and place of the travel or the use of the property, (3) the business purpose of the expense, and (4) the business relationship of the persons using the property.

Mrs. Bruns provided a mileage log that listed the date of travel, the length of the travel, and the business purpose of the travel in a majority of the entries. After totaling the miles recorded for 2003, Mrs. Bruns calculated that she used the car 79 percent of the time for business purposes.[7] Upon recalculation

---

[7] Mrs. Bruns arrived at 79 percent by dividing business miles of 18,755 by total miles of 23,550.

of the business percentage use, we conclude the business percentage use is 72 percent.[8]

Petitioners submitted gasoline receipts listing the amount of gasoline purchased, method of payment, and date. The dates on the receipts are consistent with the reported travel in the mileage log; i.e., there are increased gas purchases when the mileage log reports more miles traveled. The gasoline receipts total $1,132.49. Petitioners submitted carwash receipts of $115.20 listing the service provided, the amount, and the date rendered. The car washes are spaced throughout 2003 and are reasonable in amount and frequency. Petitioners submitted receipts of payment totaling $102.84 for repairs and maintenance on the passenger vehicle. The receipts, which are for oil changes, specify Mrs. Bruns' car and are spaced throughout 2003 as the car mileage increased. We conclude petitioners have met their burden of substantiating these actual expenses of operating a vehicle for business purposes and are entitled to a deduction of $972.38[9] in addition to the amount respondent allowed.

---

[8] Some of the entries in petitioners' mileage log did not contain a purpose. The total of the entries containing the miles traveled, the date, and the purpose of the trip is 16,976 miles.

[9] The total of gas expenses of $1,132.49 plus carwash expenses of $115.20 plus repairs and maintenance expenses of $102.84 times business use of 72 percent equals $972.38.

### 3.  Contract Labor Expenses

In general, payments made or incurred by a trade or business for personal services rendered are ordinary and necessary business expenses and may be deducted under section 162.  Sec. 1.162-7(a), Income Tax Regs.  Petitioners failed to provide any proof of payment and did not provide sufficient substantiation to permit a reasonable estimate of contract labor expenses.  Accordingly, respondent's complete disallowance of a deduction is sustained.

### 4.  Office Expenses

The cost of materials and supplies consumed and used in operations during a taxable year is generally considered an ordinary and necessary expense of conducting a business or for-profit activity.  Sec. 162; sec. 1.162-3, Income Tax Regs. Petitioners submitted photocopies of receipts for business furniture which total $5,106.83 and photocopies of receipts for business supplies, refreshments, and decorations which total $2,512.34.

Petitioners introduced into the record photographs showing the use of the furniture whose costs are claimed as a business expense.  The furniture stored business information and Shaklee products kept as inventory or orders and displayed Shaklee products.  Although Mrs. Bruns delivered Shaklee products to customers, customers would also stop by her home to pick up

products.  This required her to devote an area to storing a small inventory of products for sale and those ordered by customers and to displaying Shaklee products for sales.  Because leaders and distributors would also stop by her home, Mrs. Bruns had to provide a meeting place and store Shaklee informational tapes, CDs, and sales aids.  An area for Mrs. Bruns to coach distributors and leaders was frequently used and helpful to increasing revenue.  Further, sales aids and training materials to refer to was helpful to Mrs. Bruns in selling Shaklee products and coaching others on how to successfully sell Shaklee products.  Accordingly, the business furniture was an ordinary and necessary business expense of Mrs. Bruns in selling Shaklee products.

Petitioners also claimed an office expense deduction for the purchase of a portable CD player with speakers.  Because much of the training Mrs. Bruns received as a Shaklee distributor was done through CDs that she could listen to on a portable CD player while at home or while traveling, the CD player was necessary to sell Shaklee products.  However, the receipt petitioners submitted included the purchase of two radios unrelated to the business; we disallow a deduction for those radios.

Mrs. Bruns used the supplies in her business of selling Shaklee products.  The total amount spent on business supplies, decorations, and refreshments is not excessive in consideration of her business.  The cost of pens, paper, and other office

supplies to keep track of products, customer orders, and sales was an ordinary and necessary business expense she incurred selling Shaklee products. Further, offering coffee and candy to customers was helpful to Mrs. Bruns in promoting the sale of Shaklee products when customers visited her. Putting up seasonal decorations in the area of her home where Shaklee customers visited was also helpful to Mrs. Bruns in selling Shaklee products.

Petitioners' business expense receipts for purchases of furniture, supplies, refreshments, and decorations adequately substantiated those purchases. Each receipt was dated and provided the amount spent, a description of the item purchased, and the reason for the purchase. However, because the furniture and the portable CD player with speakers have an expected useful life exceeding 1 year, petitioners may not deduct the full amounts paid as ordinary and necessary business expenses. The costs of the business furniture and the portable CD player with speakers are capital expenses, and petitioners must properly depreciate the property. They are entitled to an allowable depreciation deduction. See sec. 263(a)(1); sec. 1.263(a)-2(a), Income Tax Regs. Petitioners are entitled to an ordinary and necessary business expense deduction of $2,512.34[10] for business

_____

[10] This is the total of the substantiated business supplies, decorations, and refreshment purchases in 2003.

supplies, decorations, and refreshments purchased in 2003. The business supplies deduction and the depreciation deductions for the furniture and the CD player are allowed in addition to the amounts respondent already allowed.

5. Rent or Lease--Vehicle, Machinery, and Equipment

Petitioners claimed a deduction of $5,968 for leasing expenses associated with the business vehicle leased by ABS and used by Mrs. Bruns in 2003. Respondent allowed a deduction of $3,647, and $2,321 remains at issue. Car leasing expenses are subject to the section 274(d) strict substantiation requirements (explained supra) because a car is listed property. Sec. 280F(d)(4).

We found that Mrs. Bruns used the leased passenger car 72 percent of the time for business purposes in 2003. The direct deposit reports issued to ABS from Shaklee show a monthly car charge of $790.41. Petitioners have substantiated ABS' car leasing expense of $6,829.14.[11] Accordingly, petitioners are entitled to a deduction for the full amount claimed on their 2003 tax return.

6. Travel Expenses

A deduction is allowed for ordinary and necessary traveling expenses incurred while away from home in the pursuit of a trade

---

[11] This number results from multiplying $790.41 x 12 months x 72 percent of business use.

or business.  Sec. 162(a)(2).  If a taxpayer travels to a destination at which he engages in both business and personal activities, the traveling expenses to and from the destination are deductible only if the trip is related primarily to the taxpayer's trade or business.  Sec. 1.162-2(b)(1), Income Tax Regs.  If the trip is primarily personal, the traveling expenses to and from the destination are not deductible; however, expenses at the location properly allocable to the taxpayer's trade or business are deductible.  Id.

Whether a trip is related primarily to the taxpayer's trade or business depends on the facts and circumstances in each case.  Sec. 1.162-2(b)(2), Income Tax Regs.  An important factor is the amount of time during the trip spent on personal activity compared to the amount of time spent on activities directly relating to the taxpayer's trade or business.  Id.  If a member of the taxpayer's family accompanies him on a business trip, expenses attributable to the family member are not deductible unless it can be adequately shown that the presence of the family member on the trip has a bona fide business purpose.  Sec. 1.162-2(c), Income Tax Regs.

Of the $4,253 petitioners claimed as travel expenses, respondent allowed $2,526 and disallowed $1,727.  Respondent disallowed deductions for expenses of trips to see relatives, to visit a friend in Minnesota, and to spend a weekend with

petitioners' daughter and with others.  Respondent also disallowed deductions for costs of luggage, a handbag, and a coin purse.

Petitioners submitted photocopies of receipts for travel expenses incurred in 2003.  The disallowed deductions are for trips having a mixed business and pleasure motivation. Petitioners saw friends and relatives who were customers and distributors of ABS and who earned bonuses for ABS in 2003. Updating these earners about the new Shaklee products and providing coaching on business leadership was business related. Visiting with friends and relatives about matters not related to ABS was for pleasure.

Where a trip has mixed motivations of business and pleasure, the costs of traveling to and from the location are deductible only if the primary purpose of the trip is business.  Sec. 1.162-2(b)(1), Income Tax Regs.  Petitioners have failed to prove how much time was spent on each trip for business and for pleasure. Without this information we cannot conclude that these trips were primarily for business and must disallow the costs of traveling to and from these locations.  Petitioners would be entitled to a deduction for expenses incurred at the location properly allocable to business activities.  However, petitioners have failed to provide sufficient information to allow any of the

disallowed travel expenses. Petitioners have not shown which expenses are properly allocable to business-related activities.

Petitioners also claimed travel expense deductions for amounts incurred to purchase business luggage. Petitioners failed to provide receipts adequately substantiating these expenses. Accordingly, petitioners are not entitled to a deduction for travel expenses above that allowed by respondent.

### 7. Meals and Entertainment Expenses

Section 162 permits the deduction of food and beverage expenses incurred by a taxpayer if they are ordinary, necessary, and reasonable expenses incurred by the taxpayer in his business. No deduction is allowed with respect to personal, living, or family expenses. Sec. 262. However, section 162(a) permits the deduction of amounts expended for meals (not lavish or extravagant under the circumstances) when away from home in the pursuit of a trade or business. In the context of section 162(a)(2), a taxpayer's home generally refers to the area of a taxpayer's principal place of employment, whether or not in the vicinity of the taxpayer's personal residence. Daly v. Commissioner, 72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (4th Cir. 1981); Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968). "[I]n the pursuit of a trade or business" has been read to mean: "The exigencies of business rather than the personal conveniences and necessities of the traveler must be the

motivating factors."  Commissioner v. Flowers, 326 U.S. 465, 474 (1946).

Section 274(a) further restricts the deduction of business food and beverage expenses.  Such expenditures must be directly related to the conduct of the taxpayer's trade or business, or associated with the active conduct of the taxpayer's trade or business, to be deductible.  Id.

An expenditure is considered associated with the active conduct of the taxpayer's trade or business if the taxpayer establishes that she had a clear business purpose in making the expenditure, such as to obtain new business or to encourage the continuation of an existing business relationship.  Sec. 1.274-2(d)(2), Income Tax Regs.

In order to establish a substantial and bona fide business discussion, the taxpayer must show that he actively engaged in a business meeting, negotiation discussion, or other bona fide business transaction, other than entertainment, for the purpose of obtaining income or other specific trade or business benefit.  Sec. 1.274-2(d)(3)(i)(A), Income Tax Regs.  Additionally, the taxpayer must establish that this business meeting, negotiation, discussion, or transaction was substantial in relation to the entertainment.  Id.  Entertainment which occurs on the same day as a substantial and bona fide business discussion will be

considered to directly precede or follow the discussion.  Sec. 1.274-2(d)(3)(ii), Income Tax Regs.

Food and beverage expense deductions are further limited by section 274(k) and (n).  No deduction is permitted for food and beverage expenses unless the expense is not lavish or extravagant under the circumstances and the taxpayer is present at the furnishing of such food or beverages.  Sec. 274(k).  Further, the amount of the deduction that would otherwise be allowed for food and beverage expenses is generally reduced by 50 percent.  Sec. 274(n)(1).

Finally, in order to deduct food and beverage expenses, a taxpayer must meet the strict substantiation requirements of section 274(d).  To substantiate these expenditures the taxpayer must prove:  (a) The amount; (b) the time and date; (c) the place; (d) the business purpose; and (e) the business relationship.  Sec. 1.274-5T(b)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46015 (Nov. 6, 1985).  The majority of the photocopied receipts and accompanying information petitioners submitted either did not have a sufficient business purpose, were for a personal expense, or otherwise failed to meet the strict substantiation requirements.

Petitioners submitted numerous grocery store receipts as food and beverage expenses with a notation that they were for guests.  Petitioners failed to specify the time and date of the

entertainment of the guests, the place where they entertained the guests, the business purpose of buying the groceries for the guests, and the business relationship of the guests. Because petitioners have failed to meet the strict substantiation requirements of section 274(d), we cannot allow a deduction for these expenses.

Petitioners submitted receipts for personal meals of both Mr. and Mrs. Bruns. Mr. Bruns was not an employee or partner of ABS or a participant in Mrs. Bruns' activities in distributing Shaklee products. Mrs. Bruns conceded at trial that petitioners were not entitled to a deduction for these expenses.

Many of the receipts for food and beverage expenses were for an amount under $10 and for a single serving of food. Mrs. Bruns admitted a particular receipt for a single serving of food in the amount of $9.60 was only for her meal, but she said she ate with a customer. Expenses for meals are personal and as such nondeductible unless a business purpose can be shown for incurring the expenses, as in the case of expenses incurred away from home in the pursuit of business and not lavish or extravagant under the circumstances. Secs. 262(a), 162(a)(2); Drill v. Commissioner, 8 T.C. 902, 903 (1947); sec. 1.262-1(b)(5), Income Tax Regs.

We conclude petitioners' home, for purposes of section 162(a)(2), was in the Sioux Falls area of South Dakota.

Petitioners claimed multiple deductions under $10 in amount for meal expenses Mrs. Bruns incurred when she was not away from home. These are personal expenses and are not deductible. See Drill v. Commissioner, supra. The meal expenses Mrs. Bruns incurred while she was away from home were not lavish or extravagant under the circumstances, were incurred in the pursuit of business, and are deductible. At the top of each receipt submitted to substantiate meal expenses incurred while away from home was a notation explaining Mrs. Bruns' business purpose in being away from home. The majority of the notations referenced a Shaklee convention, and we are persuaded that the exigencies of business prompted Mrs. Bruns to travel away from home and incur these expenses.

After eliminating the aforementioned nondeductible food and beverage expenses petitioners claimed, expenses totaling $1,409.83 remain. These expenses meet the strict substantiation requirements of section 274(d) and are for meals where Mrs. Bruns met with a customer to conduct some form of business for ABS.

A majority of these receipts are for amounts in the range of $15 to $30. Treating customers, distributors, and leaders to a meal is a strategy Mrs. Bruns employed to increase the sale of Shaklee products. Mrs. Bruns used the meals as an opportunity to deliver products to customers, spend time with customers to encourage them to buy more Shaklee products, and discuss

potentially starting their own distributorships. She used the meals with distributors and leaders as opportunities to review business strategy in their Shaklee distributorships. These business meals occurred consistently throughout 2003 and were helpful in promoting the sale of Shaklee products by distributors and leaders Mrs. Bruns supervised. Accordingly, we conclude the costs of meals for specific customers, distributors, and leaders were incurred by Mrs. Bruns to increase the sale of Shaklee products by Mrs. Bruns, her distributors, and leaders and were ordinary and necessary business expenses of Mrs. Bruns in selling Shaklee products.

Further, we conclude these meals were associated with the active conduct of Mrs. Bruns' business of distributing Shaklee products and the meals directly preceded or followed a substantial and bona fide business discussion. The meals purchased were associated with the active conduct of Mrs. Bruns in distributing and selling Shaklee products because there was a clear business purpose in purchasing the meals for customers, distributors, and leaders. Mrs. Bruns had an existing business relationship with these individuals, and meals were used to facilitate sales of Shaklee products to customers and to encourage and increase the distribution of Shaklee products by distributors and leaders. Further, at each meal, substantial and bona fide business discussions occurred. At the top of each

receipt, petitioners listed what sort of business discussion and transactions occurred at the meal.  Accordingly, petitioners are entitled to a deduction of $704.92[12] for the meals and entertainment expenses incurred in 2003.  This is in addition to the $1,192 deduction respondent allowed.

       8.  Other Expenses

The products used by Mrs. Bruns and claimed as a product promotion expense of petitioners were not specified.  Rather Mrs. Bruns admitted personal use of products and guessed at the amount of alleged non-personal-use products.  Without more specificity as to which products Mrs. Bruns used for product promotion, we cannot conclude that any portion of the $2,000 product promotion expense she claimed as a deduction is allowable as an ordinary and necessary business expense.

      B.  Schedule E Expenses

Petitioners assert that ABS rented basement space in petitioners' residence during 2003.  ABS subtracted $18,000 in rental expenses from its gross income on its Form 1065.  The alleged rental was month to month, and there was no written rental agreement.  There is lack of proof of a bona fide rental. The purported rental was not at arm's length, and we disregard it

---

[12]  This is 50 percent of the total expenses of $1,409.83 which met the requirements of secs. 162 and 274(a) and (d).  A 50-percent reduction of the allowed deduction is required by sec. 274(n).

for lack of economic substance.  Accordingly, we disallow deductions petitioners claimed on Schedule E of their return for insurance, taxes, utilities, and depreciation attributed to the rental.

C.  Schedule A Deductions:  Charitable Contributions

In general, a taxpayer is entitled to deduct charitable contributions made during the taxable year to or for the use of certain types of organizations.  Sec. 170(a)(1), (c).  A taxpayer is required to substantiate charitable contributions; records must be maintained.  Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.  Petitioners claim to have made charitable contributions of $893.98 in 2003:  Approximately $470 in cash contributions of $20 to $30 increments to undisclosed charitable organizations and $423.98 by delivery of a new baking rack to their church.

A contribution of cash in an amount less than $250 made in a tax year beginning before August 17, 2006, may be substantiated with a canceled check, a receipt, or other reliable evidence showing the name of the donee, the date of the contribution, and the amount of the contribution.  Sec. 1.170A-13(a)(1), Income Tax Regs.  Petitioners have provided no substantiation of the cash contributions, nor have they adequately identified the recipients of these contributions.  Accordingly, petitioners are not entitled to deduct these claimed cash charitable contributions.

Contributions of cash or property in excess of $250 require the donor to obtain contemporaneous written acknowledgment of the donation from the donee. Sec. 170(f)(8). At a minimum, the contemporaneous written acknowledgment must contain a description of any property contributed, a statement as to whether any goods or services were provided in consideration, and a description and good-faith estimate of the value of any goods or services referred to. Sec. 170(f)(8)(B). Petitioners claim to have contributed a baking rack to their church. The receipt they provided establishes they paid $423.98 for a new baking rack to be delivered to their church. The invoice establishes the fair market value of the baking rack as $423.98. Petitioners have provided a letter of acknowledgment from their church which meets the statutory requirements of a contemporaneous written acknowledgment. Accordingly, petitioners are entitled to a $423.98 charitable contribution deduction.

III. Section 6662(a) Penalty

Section 7491(c) provides that the Commissioner bears the burden of production with respect to the liability of any individual for additions to tax and penalties. "The Commissioner's burden of production under section 7491(c) is to produce evidence that it is appropriate to impose the relevant penalty, addition to tax, or additional amount". Swain v. Commissioner, 118 T.C. 358, 363 (2002); see also Higbee v.

Commissioner, 116 T.C. 438, 446 (2001). The Commissioner, however, does not have the obligation to introduce evidence regarding reasonable cause or substantial authority. Higbee v. Commissioner, supra at 446-447.

Respondent determined that petitioners are liable for the section 6662(a) penalty for 2003. Pursuant to section 6662(a) and (b)(1) and (2), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax due to negligence or disregard of rules or regulations or a substantial understatement of income tax. An "understatement" is the difference between the amount of tax required to be shown on the return and the amount of tax actually shown on the return. Sec. 6662(d)(2)(A). A "substantial understatement" exists if the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return for a taxable year or (2) $5,000. See sec. 6662(d)(1)(A). Respondent met his burden of production as there was a substantial understatement of income tax.

The accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners deducted as business expenses personal items such as travel with relatives and personal use of Shaklee products.  At trial petitioners conceded some of these personal items and claimed inadvertent error.  However, petitioners should have discovered these inadvertent errors well in advance of trial.  Further, petitioners deducted rent when no written rental agreement existed and the alleged rent was for an area where petitioners watched TV and relaxed.  Petitioners have failed to show they acted with reasonable care and in good faith.  Accordingly, we sustain the section 6662(a) penalty.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.