T.C. Memo. 2013-237

UNITED STATES TAX COURT

CHARLES P. KARCH AND PATRICIA L. KARCH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12428-11.                    Filed October 22, 2013.

<u>Charles P. Karch</u>, for petitioners.

<u>Jamie J. Song</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined deficiencies in petitioners'
Federal income tax, additions to tax, and accuracy-related penalties for the years
and in the amounts as follows:

| [*2] Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|---|---|---|---|
| 2003 | $31,955 | $7,989 | $6,391 |
| 2004 | 31,525 | 7,881 | 6,305 |
| 2005 | 20,417 | 5,104 | 4,083 |
| 2006 | 60,429 | 15,471 | 12,086 |
| 2007 | 34,566 | 1,855 | 6,913 |
| 2008 | 18,200 | 5,925 | 3,640 |

The issues for decision are: (1) whether petitioners are entitled to deduct expenses reported on Schedules C, Profit or Loss From Business, in excess of the amounts allowed in the notice of deficiency; (2) whether petitioners are entitled to net operating loss (NOL) deductions; (3) whether petitioners are liable for additions to tax under section 6651(a)(1); and (4) whether petitioners are liable for accuracy-related penalties under section 6662(a).[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

---

[1]  The remaining adjustments in the notice of deficiency are computational and will be resolved under Rule 155.

**[*3]**                              FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners resided in New Jersey.

Mr. Karch's Law Practice

Charles Karch (Mr. Karch) is an attorney and a certified public accountant. During the years at issue he operated a solo law practice in New Jersey. As part of his practice, Mr. Karch has prepared tax returns and has represented clients before the Internal Revenue Service (IRS). Mr. Karch is admitted to practice before this Court.

Mr. Karch hired various people to work in his law practice during the years at issue. He treated some as employees and others as independent contractors. Debora Prado and Donald Koonjy were among those treated as employees. Daniel Karch was treated as an employee for 2003 and as an independent contractor for all other years.[2] For 2006 Mr. Karch also treated Alena Bohacova, a temporary secretary, as an independent contractor.

---

[2] Daniel Karch, Mr. Karch's brother and a lawyer, performed legal services for Mr. Karch's law practice.

[*4]   During the years in issue Mr. Karch's law office was at 83 Roosevelt Avenue, Butler, New Jersey (Butler property).  From 2003 to July 2007 petitioners resided at the Butler property.[3]  Petitioners resided on the second floor, which consisted of two bedrooms and a bathroom.  Mr. Karch's law practice was on the first floor.  The kitchen was also on the first floor.

During at least 2003 through 2005 petitioners also owned a studio apartment in New York City (studio).  Mr. Karch used the studio when he visited clients or conducted business in New York City and sometimes stayed overnight.

Tax Returns

Petitioners prepared their own Federal income tax returns for the years in issue.  They claimed an NOL deduction for every year in issue except 2005.  Each year petitioners attached to their return a Schedule C for Mr. Karch's law practice.  Petitioners claimed the standard deduction for 2003, 2004, 2006, and 2007 and itemized their deductions for 2005 and 2008.  Petitioners reported the studio mortgage interest expense on Mr. Karch's Schedules C.  For 2003, 2004, and 2006 petitioners reported all the Butler property mortgage interest expense on Mr. Karch's Schedules C, even though the Butler property was also their residence

---

[3]  In July 2007 petitioners moved to a residence in Kinnelon, New Jersey (Kinnelon property).  Mr. Karch continued to operate his law practice at the Butler property.

**[*5]** during those years. For 2005 petitioners reported mortgage interest expenses on both Schedule A, Itemized Deductions, and Schedule C. It is unclear from the record whether the mortgage interest expense on the Schedule A relates to the studio or the Butler property, or some combination thereof.

Petitioners failed to timely file their Federal income tax returns for all of the years at issue. Although petitioners' income tax returns were due on April 15 of the year following the taxable year, the actual filing dates were as follows:

| Taxable year | Date return filed |
|---|---|
| 2003 | Oct. 22, 2008 |
| 2004 | Oct. 21, 2008 |
| 2005 | Aug. 26, 2010 |
| 2006 | Aug. 15, 2010 |
| 2007 | Oct. 22, 2008 |
| 2008 | Oct. 25, 2010 |

Notice of Deficiency

On February 25, 2011, the IRS issued a notice of deficiency making numerous adjustments for the years at issue. The IRS disallowed petitioners' claimed NOL deductions. It also disallowed all or some of the following claimed Schedule C expense deductions: advertising, car and truck, contract labor,

[*6] depreciation and section 179, mortgage interest, utilities, wages, and other expenses.[4]

The IRS also determined that while petitioners resided at the Butler property only 33% of the property was used for Mr. Karch's law practice. Thus, for 2003 through 2006 the notice of deficiency permitted petitioners to deduct 33% of their mortgage interest expenses and taxes and licenses expenses[5] on Schedule C and the remaining 67% on Schedule A.[6] For 2007 the notice of deficiency allowed all of petitioners' claimed mortgage interest expenses on Schedule C and permitted petitioners to deduct an additional $8,116 of mortgage interest expenses on Schedule A. The notice of deficiency permitted petitioners to deduct $6,100 of

---

[4] Petitioners reported the following as other expenses: administrative fees, bank charges, computer fees, contract services, freight and shipping, postage, professional dues, publications, telephone, and misc.

[5] Petitioners did not claim, and the notice of deficiency did not allow, any deduction for taxes and licenses expenses on Schedule C for 2005.

[6] It appears that respondent did not distinguish between the Butler property and the studio when allocating mortgage interest expenses between Schedules A and Schedules C; thus, 33% of the studio mortgage interest expenses was also permitted on Schedules C and the remaining 67% was deducted on Schedules A.
For example, for 2003 petitioners substantiated $11,085 of studio mortgage interest expenses and $36,589 of Butler property mortgage interest expenses, for total mortgage interest expenses of $47,674. The notice of deficiency allocated 33% of $47,674 on Schedule C ($15,732) and the remaining 67% on Schedule A ($31,941).

**[*7]** their claimed taxes and licenses expenses on Schedule C and the remaining $1,352 on Schedule A.  For 2008 the notice of deficiency did not make any adjustments to petitioners' claimed mortgage interest expenses and taxes and licenses expenses.

The notice of deficiency permitted petitioners to itemize their deductions for the years in which the itemized deductions exceeded the standard deduction (i.e., 2003, 2004, and 2006).

Procedural Background

Petitioners petitioned this Court on May 25, 2011, and their case was set for trial in June 2012.  On May 29, 2012, petitioners filed a motion to continue.  Petitioners stated that they needed additional time to prepare for trial because of health problems and severe weather in New Jersey.  Respondent did not object to a continuance, and the Court granted petitioners' motion.  In September 2012 petitioners' case was rescheduled for trial on February 25, 2013.  On January 11, 2013, respondent filed a motion to compel responses to respondent's request for production of documents and a motion to compel responses to respondent's interrogatories (motions to compel).  The Court granted respondent's motions to compel, but petitioners did not comply with our order.

[*8]   On February 14, 2013, petitioners filed another motion to continue. Petitioners again stated that they needed additional time to prepare for trial because of health problems and severe weather.  Respondent objected to another continuance, and we denied petitioners' motion.  At calendar call on February 25, 2013, petitioners made an oral motion to continue.  The Court denied petitioners' motion and set the trial for March 5, 2013.  At trial petitioners again made an oral motion to continue which the Court denied.

OPINION

## I.  Petitioners' Request for Additional Time

On brief petitioners request additional trial time, stating that Mr. Karch is "willing, and has been willing, to present more documentation, however, has been denied the ability to do so."

Reopening the record for the submission of additional evidence lies within the discretion of the Court.  Butler v. Commissioner, 114 T.C. 276, 286-287 (2000) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331 (1971)).  The policy of the Court is to try all of the issues raised in a case in one proceeding to avoid piecemeal and protracted litigation.  Markwardt v. Commissioner, 64 T.C. 989, 998 (1975).  Petitioners were given ample opportunity to provide evidence both before and at trial.  Moreover, petitioners

**[*9]** failed to comply with the Court's order granting respondent's motions to compel. Petitioners also failed to abide by the Court's standing pretrial order that requires all documents that a party expects to use at trial be provided to the other party at least 14 days in advance of the trial calendar. Petitioners have not been denied the opportunity to present documentation; they have simply refused to avail themselves of the many opportunities provided. Under such circumstances, we decline to bifurcate the trial to receive additional evidence.

## II. Burden of Proof

In general, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Under section 7491(a), the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any relevant factual issue and satisfies the requirements of section 7491(a)(2). Section 7491(a)(2) requires a taxpayer to demonstrate that he (1) complied with requirements under the Code to substantiate any item, (2) maintained all records required under the Code, and (3) cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews. See also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001). The burden is on the taxpayer to

**[\*10]** show that he satisfied these requirements. See Richardson v. Commissioner, T.C. Memo. 2005-143.

Although petitioners argue the burden shifts to respondent, they have failed to show that they satisfy the requirements of section 7491(a)(2). They have failed to show that they complied with the Code's substantiation requirements, maintained required records, and cooperated with respondent. Accordingly, petitioners bear the burden of proof.

III. Deficiency

As we have observed in countless opinions, deductions are a matter of legislative grace, and the taxpayer bears the burden of establishing entitlement to any claimed deduction. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). This burden requires the taxpayer to substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to some statutory provision and must further substantiate that the expense

**[*11]** to which the deduction relates has been paid or incurred. See sec. 6001; Hradesky v. Commissioner, 65 T.C. at 90; sec. 1.6001-1(a), Income Tax Regs. In the event that a taxpayer establishes that a deductible expense has been paid but is unable to substantiate the precise amount, we generally may estimate the amount of the deductible expense, bearing heavily against the taxpayer whose inexactitude in substantiating the amount of the expense is of the taxpayer's own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). We cannot estimate a deductible expense, however, unless the taxpayer presents evidence sufficient to provide some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Petitioners' records purporting to substantiate their claimed deductions are not well organized. The records have not been submitted to the Court in a fashion that allows for easy association with the portions of deductions that remain in dispute. Nevertheless, we make what sense we can with what we have to work with and summarize our findings in the following paragraphs.

A. Wages

Respondent completely disallowed petitioners' claimed wages expense deductions for the years at issue. Petitioners submitted Forms W-2, Wage and Tax Statement, for 2004, 2005, 2007, and 2008 and Forms W-3, Transmittal of Wage

**[*12]** and Tax Statements, for 2006, 2007, and 2008.  However, the total wages reported on the Forms W-2 for 2004 and 2005 do not match the wages reported on the Schedules C for those years.  The wages reported on Forms W-3 for 2006 and 2007 do not match the wages reported on the Schedules C for those years.  Moreover, petitioners offered no proof that any of these forms were filed with the IRS.  Petitioners also failed to offer any proof of payment of the amounts reported on the forms (e.g., canceled checks) or any underlying documentation (e.g., time sheets or employment contracts).  We find these Forms W-2 and Forms W-3 insufficient to substantiate the claimed wages expense deductions.  See Parker v. Commissioner, T.C. Memo. 2012-357 (finding a Form 1099-MISC, Miscellaneous Income, insufficient substantiation when not filed with the IRS, not supported by any underlying documentation, and not matching information reported on tax return).

For 2003 we find that petitioners did establish the amounts of wages paid to employees Daniel Karch, Ms. Prado, and Mr. Koonjy.  Petitioners introduced canceled checks showing total payments in 2003 of $15,699, $7,561 and $3,073 to Daniel Karch, Mr. Koonjy and Ms. Prado, respectively.  Thus, petitioners are entitled to deduct $26,333 as wage expenses on Mr. Karch's 2003 Schedule C.

**[\*13]** Respondent's determinations with respect to wage expense deductions for the other years at issue are sustained.

### B. Contract Services

Except for 2005, Mr. Karch did not deduct the money paid to independent contractors as "contract labor expense[s]" (line 11 of Part II, Expenses, of Schedule C) but instead deducted it as contract services expenses under "other expenses" (line 27). For 2005 Mr. Karch reported $39,410 of contract services expenses under other expenses (line 27) and $39,410 of contract labor expenses (line 11).[7] It appears that Mr. Karch accidently reported the contract labor expenses twice for 2005.[8] Because Mr. Karch reported contract labor expenses as "other expense" for all other years, we assume that he intended to report the contract labor expenses under "other expenses" for 2005.[9]

Petitioners introduced canceled checks establishing the amounts paid for contract services for 2004, 2005, and 2006. Mr. Karch paid Daniel Karch $750,

---

[7] Respondent completely disallowed the claimed contract labor expenses.

[8] When the identical amounts were pointed out to Mr. Karch at trial, he testified: "I can see that. It looks like a duplicate."

[9] This is consistent with petitioners' position on brief. On brief petitioners assert that the canceled checks to independent contractors in 2005 should increase the amount of allowed "other expenses". Petitioners do not address the contract labor expense deduction in their brief.

[*14] $31,340, and $46,150 in 2004, 2005, and 2006, respectively. In 2006 Mr. Karch paid Ms. Bohacova $2,254. The notice of deficiency allowed petitioners deductions for "other expenses" (which include contract service expenses) of $14,130, $18,866, and $19,367 for 2004, 2005, and 2006, respectively. It is unclear from the record whether the allowed "other expenses" include any of the amounts Mr. Karch claimed as contract services expenses. Respondent may have already allowed petitioners deductions for some or all of the contract services they substantiated at trial. Accordingly, petitioners are entitled to deduct only the contract services expenses in excess of the amounts of "other expenses" allowed in the notice of deficiency. Petitioners, therefore, are entitled to additional deductions for other expenses of $12,474 for 2005 and $29,037 for 2006.

To substantiate contract labor expenses for 2007 and 2008, petitioners introduced spreadsheets showing total payments to Daniel Karch of $52,850 and $54,139, respectively. However, petitioners did not introduce any underlying documentation (e.g., contracts, invoices, or Forms 1099-MISC filed with the IRS) or any proof of payment (e.g., canceled checks). We find that the spreadsheets are insufficient to substantiate Mr. Karch's claimed contract services expenses for 2007 and 2008. See Bruns v. Commissioner, T.C. Memo. 2009-168 (concluding a

**[*15]** Quicken printout listing payments insufficient to substantiate contract labor expenses with no proof of payment).

### C. 2003 Various Expenses

In an attempt to substantiate various expenses reported on Mr. Karch's 2003 Schedule C, petitioners introduced a spreadsheet that Mr. Karch prepared the weekend before trial. Petitioners did not introduce the underlying documents from which Mr. Karch compiled the spreadsheet or offer any proof of payment. Furthermore, the notice of deficiency allowed some of petitioners' claimed 2003 Schedule C deductions (e.g., advertising, utilities, car and truck), and it is unknown whether the expenses on the spreadsheet relate to expenses respondent has already allowed. We find the spreadsheet insufficient to substantiate any of Mr. Karch's 2003 Schedule C deductions in excess of those the notice of deficiency allowed.

### D. Mortgage Interest Expenses

#### 1. Percentage Allowed on Schedule C

Petitioners dispute respondent's determination that only 33% of the Butler property was used exclusively for Mr. Karch's law practice while they lived there. However, they have failed to show that this determination is incorrect. Petitioners did not introduce photographs of the Butler property or a floor plan. At trial Mr.

**[*16]** Karch estimated that the Butler property was approximately 2,000 square feet and guessed that the second floor (which consisted of two bedrooms and a bathroom) was 220 square feet. We find Mr. Karch's testimony insufficient to establish that more than 33% of the Butler property was used for his law practice from 2003 to July 2007. Thus, petitioners are entitled to deduct only 33% of the Butler mortgage interest expense on Schedules C.

Petitioners also assert that they are entitled to deduct studio mortgage interest expenses on Schedules C because Mr. Karch used the studio when he visited clients or conducted business in New York City. However, it is unclear how much of the studio mortgage interest petitioners argue is deductible on Schedules C. At trial Mr. Karch testified: "[S]ome of it may belong under Schedule A. Do I know exactly how much? Offhand I couldn't guess." Morever, petitioners have failed to establish that the studio was used exclusively for business purposes. Thus, we find that petitioners are not entitled to deduct the studio mortgage interest expenses on Schedules C in excess of the percentage allowed by respondent.[10]

---

[10] As mentioned supra note 6, the notice of deficiency appears to have permitted petitioners to deduct 33% of the studio mortgage interest expense on Mr. Karch's Schedules C.

[*17]          2. Amounts of Mortgage Interest Expenses

Petitioners introduced numerous Forms 1098, Mortgage Interest Statement, for the years in issue. Petitioners were able to substantiate mortgage interest expenses greater than the amounts allowed in the notice of deficiency for 2004 and 2007. For 2004 petitioners reported $53,211 of mortgage interest expenses on Schedule C. Respondent allowed petitioners to deduct 33% of $53,211 ($17,560) on the Schedule C and moved the remaining 67% ($35,651) to Schedule A. At trial petitioners introduced two 2004 Forms 1098 showing total mortgage interest expenses of $56,791.[11] Thus, petitioners are entitled to an additional $3,581 of mortgage interest expenses for 2004 on their Schedule A and Schedule C in the same percentages as allowed in the notice of deficiency.

For 2007 the notice of deficiency did not adjust the mortgage interest expenses petitioners reported on Schedule C and permitted them to deduct $8,116 of mortgage interest expenses on Schedule A. At trial petitioners introduced a 2007 Form 1098 showing mortgage interest expenses of $19,152 for the Kinnelon property. Thus, petitioners are entitled to an additional Schedule A mortgage interest expense deduction of $11,036 for 2007.

---

[11] Of this total, $10,153 relates to the studio and $46,638 relates to the Butler property.

**[*18]** E. <u>Taxes and Licenses Expenses</u>

At trial petitioners introduced a 2004 property tax assessment for the Butler property which states: "THIS IS NOT A BILL." Petitioners did not offer any proof that they paid real estate taxes in 2004 in excess of the amount allowed in the notice of deficiency.

Petitioners introduced a bill and proof of payment for 2008 real estate taxes for the Kinnelon property. However, the bill and proof of payment were less than the real estate taxes they deducted on their 2008 Schedule A (which were allowed by the IRS).

Petitioners did not introduce any other evidence with respect to the taxes and licenses. Accordingly, respondent's determinations with respect to the taxes and licenses deductions are sustained.

F. <u>Net Operating Losses</u>

Section 172(a) allows a taxpayer to deduct an NOL for a taxable year that equals the sum of the NOL carryovers plus NOL carrybacks to that year. A taxpayer claiming an NOL deduction bears the burden of substantiating the deduction by establishing both the NOL and the amount of any NOL that may be carried over or back to the subject years. Rule 142(a)(1); <u>United States v. Olympic Radio & Television, Inc.</u>, 349 U.S. 232, 235 (1955); <u>Green v. Commissioner</u>, T.C.

[*19] Memo. 2003-244, 86 T.C.M. (CCH) 273, 274-275 (2003).  As part of meeting that burden, the taxpayer must file with his return for that year a concise statement setting forth the amount of the NOL deduction claimed and all material and pertinent facts, including a detailed schedule showing the computation of the NOL deduction.  Sec. 1.172-1(c), Income Tax Regs.

Petitioners failed to attach the required schedule to any return in which they claimed an NOL deduction.  They also failed to provide returns for any other year showing that they incurred a loss which could be carried forward or back to the years in issue.  At trial petitioners introduced two documents that look like Schedule A-NOL of Form 1045, Application for Tentative Refund.  When the Court noted at trial that the documents did not have a date or form number like other IRS forms, Mr. Karch stated that he was not submitting the documents as official IRS forms.  These documents are for the years 1999 and 2000 and show an NOL for each of those years.  Even if we were to accept these documents as credible evidence of NOLs for 1999 and 2000, they do not establish that petitioners had NOLs for the years at issue.

Petitioners did not introduce any other evidence relating to NOLs.  Petitioners have failed to produce credible evidence establishing when the NOLs were incurred, the amounts incurred, or the amounts available to be carried to the

[*20] years at issue.  Accordingly, respondent's disallowance of the NOL deductions is sustained.

### G.  Other Adjustments

Petitioners did not introduce any evidence with respect to the remaining adjustments in the notice of deficiency for the years in issue.  Accordingly, the remaining adjustments are sustained.

## IV.  Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax for failure to file a return when due "unless it is shown that such failure is due to reasonable cause and not due to willful neglect".  The addition equals 5% of the amount required to be shown as tax on a return for each month that the return is late, not to exceed 25% in total.  The Commissioner has the burden of production with respect to the liability of an individual for an addition to tax under section 6651(a)(1).  Sec. 7491(c).  The burden of showing reasonable cause under section 6651(a) remains on the taxpayer.  Higbee v. Commissioner, 116 T.C. 438, 446-448 (2001).  To show reasonable cause, petitioners must demonstrate that they exercised ordinary business care and prudence but nevertheless were unable to file their income tax returns by their due dates.  See United States v. Boyle, 469 U.S. 241, 246 (1985);

**[\*21]** sec. 301.6651-1(c), Proced. & Admin. Regs.  Willful neglect is defined as a "conscious, intentional failure or reckless indifference."  Boyle, 469 U.S. at 245.

Respondent has met his burden because petitioners filed their Federal income tax returns late for the years in issue.  Petitioners failed to demonstrate reasonable cause and lack of willful neglect for filing late returns.  Therefore petitioners are liable for the additions to tax under section 6651(a)(1) for the years in issue.

## V.  Section 6662(a)

Pursuant to section 6662(a) and (b)(1) and (2), a taxpayer may be liable for a penalty of 20% of the portion of an underpayment of tax due to:  (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax.  "Negligence" is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code; this includes a failure to keep adequate books and records or to substantiate items properly.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances.  See Allen v. Commissioner, 92 T.C. 1, 12 (1989), aff'd, 925 F.2d 348, 353 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985).  "Disregard" means any careless, reckless, or intentional disregard.  Sec.

[*22] 6662(c). "Understatement" means the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A). A "substantial understatement" of income tax is defined as an understatement of tax that exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000. Sec. 6662(d)(1)(A).

The Commissioner bears the initial burden of production. Sec. 7491(c). If the Commissioner satisfies his burden, the taxpayer then bears the ultimate burden of persuasion. Higbee v. Commissioner, 116 T.C. at 446-447. Respondent has discharged his burden of production under section 7491(c) by showing that petitioners failed to keep adequate books and records and that they failed to properly substantiate their reported expenses. See sec. 1.6662-3(b)(1), Income Tax Regs. Furthermore, to the extent the Rule 155 computations establish that petitioners have substantial understatements of income tax, respondent has also met his burden of production in this regard. See Prince v. Commissioner, T.C. Memo. 2003-247.

Petitioners offered no evidence that they acted with reasonable cause and in good faith. Considering all the circumstances, including the fact that Mr. Karch is a certified public accountant and a lawyer, we are unable to conclude that

**[\*23]** petitioners acted with reasonable cause and in good faith in respect to the preparation and filing of their tax returns for the years in issue. As a result, we sustain the accuracy-related penalties that respondent determined under section 6662(a) for the years in issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.